## INTERTYPE CORPORATION v. STROSNIDER.

No. 10808—Opinion Filed Jan. 2, 1923.

(Syllabus.)

1. **Sales—Conditional Sales—Failure to File Contract—Validity as to Third Persons.**

Where A. sells property to B. under a conditional sales contract, and such contract is not filed as provided in section 6745, Rev. Laws 1910, such contract is void as to a purchaser from a creditor of B. under an agreement that the property shall be sold and proceeds applied on mortgage indebtedness of B. to such creditor.

2. **Chattel Mortgages—Sale by Agreement—Insufficiency of Evidence.**

Evidence examined, and held insufficient to show an agreement between B. and his creditor that the property should be sold and proceeds applied on the mortgage indebtedness.

3. **Same—Inclusion of After-Acquired Property.**

In order for mortgage to cover after-acquired property, it must show intention of the mortgagor to cover the after-acquired property.

4. **Same—Substitution of Property—Agreement.**

As between a mortgagor and mortgagee, other property may be substituted for that

included in the mortgage; but such substitution results by reason of agreement between the parties.

## 5. Same—Insufficiency of Evidence.

Evidence examined, and held insufficient to show an agreement for substitution.

Error from District Court, Pawnee County; Redmond S. Cole, Judge.

Replevin by the Intertype Corporation against John Strosnider. Judgment for defendant, and plaintiff brings error. Reversed and remanded, with directions.

Geo. E. Merritt and Albert L. McRill, for plaintiff in error.

McCollum & McCollum, for defendant in error.

COCHRAN, J. This was an action brought by the Intertype Corporation, as plaintiff, against John Strosnider, as defendant, for the possession of one Intertype machine. From judgment in favor of the defendant, the plaintiff has prosecuted this appeal. The record shows that defendant formerly owned the Times-Democrat at Pawnee, Okla., and in 1917 sold the plant to Harry Lloyd, receiving some cash and a mortgage on the plant for the balance of the price. Lloyd sold the plant to A. M. Armstrong, and thereafter plaintiff sold Armstrong one Intertype machine for $3,230, for which Armstrong paid $100 in cash and delivered to the plaintiff one Junior linotype, which was a part of the plant originally owned by defendant and on which defendant had a mortgage, and received a credit for this linotype of $400 on the purchase price of the new machine, and the remainder of the purchase price was to be paid in monthly installments, for which notes and mortgages were to be executed. The contract between Armstrong and plaintiff covering this conditional sale was never filed for record as provided for by section 6745, Rev. Laws 1910, and Armstrong never executed the notes and mortgage which he agreed to execute. The defendant transferred his notes and mortgage on the plant of the Times-Democrat to the Pawnee National Bank as collateral security for indebtedness of the defendant to the bank, and, default having been made in the payment of the note secured by such mortgage, the bank took possession of the property secured by the mortgage and also the Intertype machine purchased from the plaintiff, and, having posted notices of sale of the chattel mortgage, sold said property, including the Intertype machine, and the defendant purchased the property at such sale. Default having been made in the payment

of the amounts due to the plaintiff by Armstrong, the plaintiff demanded from the defendant the machine which plaintiff had sold to Armstrong and which had been purchased by defendant at the foreclosure sale. The plaintiff asserted title to such property by reason of the provisions of the conditional sales contract executed by Armstrong to plaintiff at the time of the purchase of the machine. The defendant refused to deliver the machine to the plaintiff, and this action was filed by plaintiff for possession of the machine. The case was tried to jury, and verdict returned for the defendant.

The trial court held that the contract executed by Armstrong to the plaintiff was a conditional sales contract and came within the provisions of section 6745, Rev. Laws 1910, and submitted the case to the jury on the part of the defendant on two theories. First, that the defendant had no knowledge of the existence of the sales contract of the defendant and was a bona fide purchaser of the property; that although the machine was not covered by the mortgage, it was voluntarily turned over to the Pawnee National Bank in satisfaction of the indebtedness of Armstrong to the bank or to have the same sold and the proceeds applied on the mortgage indebtedness. Second, that there was a substitution of the machine purchased by Armstrong to the plaintiff in place of the original machine covered by the mortgage held by the bank.

Frequent reference is made, in the instructions of the court and in the brief of the defendant, to the defendant as an innocent purchaser; but the facts in this case do not bring the defendant within the meaning of those words as used in section 6745, Rev. Laws 1910. He was the mortgagee in the mortgage which was foreclosed by the Pawnee National Bank, and, as such, he had full knowledge of the property covered in such mortgage. The record discloses that this property was advertised and sold as mortgaged property, and as the purchaser of such property at that sale he had full knowledge that the Intertype machine was not covered by the mortgage. The bank, however, was a creditor of Armstrong and, the conditional sales contract not having been recorded, the plaintiff would not be permitted to assert any title to the machine as against the bank, or the purchaser at its sale, provided the bank acquired any rights to said property by reason of the substitution of the new machine for the one covered by the mortgage or by reason of an agreement between Armstrong and the bank by which the machine was delivered to the bank in satisfaction of

the mortgage indebtedness or by which the property was delivered to the bank under an agreement to sell the property for Armstrong and apply the proceeds of the sale on the mortgage indebtedness.

We have examined the record carefully for evidence to support the theory that this property was voluntarily delivered to the bank by Armstrong in satisfaction of the mortgage indebtedness of Armstrong to the bank, or under an agreement by which the bank was to sell the property and apply the proceeds on the mortgage indebtedness. In that connection, the attorney representing the bank and making the sale testified as follows:

"Q. You say that you represented the Pawnee National Bank in the sale of this property under the mortgage sale? A. Yes, sir, I did. Q. Did you have any conversation with Armstrong relative to his surrendering the plant over to the bank? A. I did; yes, sir. Q. Did that include the piece of machinery that is in controversy in this trial? A. Yes, he turned over the whole. Q. You may state for the court and jury just what he did in turning the plant over to you. A. He told me in substance that he was going to quit the plant because he could not pay for it, and he told us to take possession of the plant and go ahead and do whatever we wanted to do. Q. After he told you to take possession of the plant, did the bank take possession of it? A. Yes, sir. Q. And then proceeded to sell it? A. Yes, sir. Q. He did not at any time during the progress of the sale of the plant interfere with the sale of the plant, did he? A. No, he did not at all."

The above is all of the testimony on that phase of the case, and only shows a voluntary delivery of the property to the bank for the purpose of foreclosure under its mortgage, and the bank, by reason of that action, was placed in no better position than if it had taken possession of the property by action and then proceeded to foreclose such mortgage by notice. This testimony cannot be held to be sufficient to constitute an agreement between Armstrong and the bank by which the title to the property was vested in the bank or authority given to the bank to sell the property for Armstrong independent of the rights of the bank under the mortgage. In instruction No. 12, the jury were instructed on the law of substitution as follows:

"You are instructed that there is some evidence in this case as to a mortgage given by one Lloyd on the fixtures of the Pawnee Times-Democrat, but which mortgage contained no provision for including after-acquired property, and that under such circumstances such mortgage would not in any event cover the personal property involved in this action, to wit, the Intertype machine.

"However, you are instructed that if the mortgage in question covered a linotype machine, and the said A. M. Armstrong sold said linotype machine to the plaintiff company, intending thereby that the holder of such mortgage should have a lien on said Intertype machine in lieu of the lien on the linotype machine, and that subsequently thereto he turned over to the assignee of said mortgage said Intertype machine to be sold to apply on the debt on which said mortgage was given as security, and that said assignee of said mortgage came in possession of said property without any knowledge, either actual or constructive as herein defined, of the existence of the claim of the plaintiff corporation, and that said assignee of said mortgage then advertised said property for sale and sold the same, and the defendant Strosnider at said sale purchased said property, then and in that event the defendant Strosnider would be entitled to retain said property as against the claim of the Intertype Company."

This instruction not only incorrectly states the law as to substitution of newly-acquired property for property described in the mortgage, but there is no evidence in the record justifying an instruction on substitution. In Mitchell v. Guaranty State Bank of Okmulgee, 68 Okla. 110, 172 Pac. 47, it is held:

"In order for a mortgage on after-acquired property to be operative, it must show the intention of the mortgagor to cover the after-acquired property."

It is conceded in this case that there is nothing in the mortgage to show an intention to cover after-acquired property.

Even if possession for the purpose of foreclosure had been taken, the title to after-acquired property could not pass in the absence of a provision in the mortgage to that effect. Blanchard v. Cooke (Mass.), 11 N. E. 83; Hallfors v. Gove (Mass.) 114 N. E. 314.

It has been held, however that an agreement for the substitution of other property for that originally covered by the mortgage is valid between the parties to the instrument. 6 Cyc. 1035. In Jones on Chattel Mortgages, sec. 71, it is said:

"There can be no substitution of other property in place of that described in the mortgage by agreement of the parties, so as to make the mortgage a lien upon the substituted property as against third persons having no actual notice of the agreement; though, as between the parties to such agreement, the mortgage may be a lien upon substituted property."

Again, in section 154, the same authority says:

"But as between the mortgagor and mortgagee, other property may be substituted for that included in the mortgage. Such property, however, is not then held by virtue of the mortgage, but by virtue of the agreement of the parties whereby an equitable lien, cognizable only in a court of equity, arises in favor of the mortgagee."

In order to come within the provisions of the law relative to substitution, there must be an agreement between parties whereby substitution is agreed upon. In Jones on Chattel Mortgages, sec. 154, we find the rule stated as follows:

"The fact that the new goods were acquired by way of renewal of the goods on hand, or in substitution for them, or were paid for out of proceeds of the old, has seemed in a few cases to be the ground upon which the mortgage has been sustained as a lien upon the new goods; yet this ground has been so often declared ineffectual to give the mortgage any validity as to goods subsequently acquired, that no exception to the general rule prevailing at law regarding such mortgages can be sustained."

This holding does not in any manner conflict with the rights of the mortgagee by accession. The distinction between substitution by agreement and accession is stated in the case of Fowler v. Hoffman, 31 Mich. 214, as follows:

"If the material was purchased to supply the wear, decay, and destruction of the old and was so commingled with the old as not to be readily distinguished, it would become a part of the mortgage proper by accession, otherwise not."

The defendant cites the following evidence to justify the submission of the case on the theory of substitution: The defendant testified, in substance, that there was a Junior linotype machine in the plant at the time it was turned over to Lloyd and Armstrong, and this machine was covered by the mortgage taken by him and assigned to the bank; but this machine was traded in by Armstrong on the Intertype machine without his knowledge, and thereafter he had the following conversation with Armstrong:

"When I first learned that a deal like this was on hands, I thought I had better look after it. I first went to Mr. Armstrong and reminded him of the mortgage that was already existing. Mr. Armstrong said, 'I don't see as you have—where your kick is, we are improving your security, your security is being improved.' And I went directly from the printing office to the depot in order to catch Mr. Montgomery. I spoke to Mr. Montgomery in regard to the kind of a deal that he had, and he said that he had given Mr. Armstrong an especially good deal for the reason that—well, he says, 'There will be no trouble in collecting from him, no collections, there will be no notes to fool with.'"

This witness testified further:

"Q. What was your judgment and belief as to the terms and conditions upon which the new machine was being purchased? A. I believed Mr. Armstrong and Mr. Clark was buying the machine and putting it in for the purpose of enlarging and improving the plant. Q. Paying for it outright? A. Paying for it themselves; yes, sir."

Armstrong testified:

"Q. As a matter of fact, you and he talked this over and you were consulting with him because you knew that he had a mortgage on the plant, didn't you? A. Yes. Q. And that was the reason that you were talking to him about it, and, as a matter of fact, the whole conversation between you and John was running to the effect that if you did get the new machine that his mortgage would be good on the new machine, didn't you? A. Well, I don't know about that at all, about the legal effect of the mortgage on the new machine. Q. I am not talking about the legal effect. A. He and I talked about the—how much improved the shop would be. Q. Didn't you also talk about how much better his security would be? A. Not in that respect; it was more in the consideration that the thing would sell for if we made a sale of it. * * * Q. Well, then, the question is, Did you intend for this new machine to stand in the place of the old machine so far as John's mortgage was concerned? A. No; if I stated that question at all, I don't know whether it came to me in that way at that time, but I just felt that whatever—that we got a big value for the old machine in this new machine and that whatever this four-hundred-dollar allowance that we got for the old Junior, I felt was three or four times the price of it, the value of it, and that just that equity in the new machine would more than pay for the old Junior. Q. So you did, then, expect for the new machine, as far as you were concerned, to take the place of the old machine so far as John's mortgage attached? A. So far as the value of that machine in that—equity in it."

The foregoing testimony does not show an agreement between the parties to substitute the Intertype machine for the old machine covered by the mortgage. The intention of Armstrong that the equity in the new machine should be substituted for the machine covered by the mortgage is not sufficient to make a contract of substitution. It is necessary that the minds of the parties should

meet in an agreement in order to constitute a substitution.

We are of the opinion that the court erred in giving instructions Nos. 11 and 12, and we are also of the opinion that there was insufficient evidence to sustain the judgment of the court on either of the theories upon which the case was submitted to the jury, and the judgment of the trial court is reversed, with directions to grant a new trial and that further proceedings be had consistent with this opinion.

HARRISON, C. J., and KANE, JOHNSON, and NICHOLSON, JJ., concur.