**ELDER v. STURGES.**

No. 25876.    Sept. 25, 1935.

William Blake and C. Lawrence Elder, for plaintiff in error.

Kight & Kight, for defendant in error.

PHELPS J. N. M. Foster was the owner of 160 acres of land. In the autumn of 1932 he leased it to the defendant, Elder (plaintiff in error), to farm during the year 1933. The rent to be received by the owner, Foster, was one-fourth of the crops to be produced.

In the spring of 1933 the defendant, Elder, and one Scott entered into a verbal agreement to the effect that they would make a partnership crop on the land belonging to Foster, Elder to plant and cultivate and Scott (in so far as the cotton crop herein involved is concerned) to chop and pick. Scott and Elder were to share equally in the net proceeds. At the time of their agreement they consulted Foster, who approved the arrangement.

It is uncertain from the record whether Scott assisted in the planting and cultivating, but at any rate the two of them planted a certain portion of the farm to cotton,—the area, later measured, proved to be 36 acres. At about this time Scott, being indebted to the plaintiff, Sturges, for groceries, and desiring more groceries, gave plaintiff his note and chattel mortgage covering his interest in the cotton crop. Although the mortgage at one place described it as "all of his interest in 30 acres of cotton now growing on the Foster farm," at another place the mortgage recites that "said mortgagor's interest is to be one-half of all cotton after rent of one-fourth is paid"; the parties do not dispute that the mortgagor, Scott, owned a half interest in 36 acres instead of a half interest in only 30 acres, hence we treat his interest as being one-half of the 36 acres. The mortgage was recorded.

Subsequently the defendant, Elder, under the crop regulation plan, sold to the United States government 18 acres of the cotton as it stood in the field, receiving from the government full payment therefor. Elder paid the landlord one-fourth of this sum as rental on the 18 acres and retained the entire balance himself, instead of dividing it with Scott.

After the remaining 18 acres began maturing, Scott began picking it, and a certain portion thereof was placed by Scott and Elder in the granary on the rented farm. Elder sold two loads thereof, and paid half of the proceeds to the plaintiff to apply on Scott's note and mortgage. The other half of the proceeds was retained by the defendant, Elder. Upon Elder's commencing the gathering of the remainder of the crop the plaintiff mortgagee instituted this action, replevining that portion of the cotton which was still in the field and in the granary, and seeking damages for conversion of that portion of the cotton which had been picked from this remaining 18 acres and sold by Elder (minus the one-half of the proceeds thereof which Elder had applied on Scott's mortgage). There is some dispute in the briefs concerning certain facts in evidence, but the foregoing are the material facts in evidence and reasonable inferences therefrom.

This case was first filed and tried in a justice of the peace court, wherein Scott and Elder were joint defendants, and judgment was rendered against both of them. Scott did not appeal to the district court, but the defendant Elder did appeal thereto. The verdict of the jury and judgment of that court were in favor of the plaintiff mortgagee on both the replevin and conversion. The defendant, in appealing, attacks the validity of the judgment entirely on the principles dealing with replevin, and there are no issues concerning the subject of conversion before us.

The first contention of defendant Elder is that under the evidence his former codefendant, Scott, was a cropper, as distinguished from a tenant, and therefore had no right of property or mortgageable interest in the cotton until after its gathering and separation, and therefore could not validly execute the mortgage which was given to plaintiff.

We have read the entire record and are convinced that the evidence amply sustains the conclusion that Scott and Elder were partners, and as such partners were tenants of the landlord, Foster, as distinguished from croppers. In Empire Gas & Fuel Co. et al. v. Denning, 128 Okla. 145, 261 P. 929, this court distinguished between croppers and tenants as follows:

"'The difference between a cropper and a tenant is that the cropper is a hired hand paid for his labor with a share of the crop he works to make and harvest. He has no exclusive right to possession and no estate in the land nor in the crop till the landowner assigns to him a share. The tenant has exclusive right to possession of the lands he cultivates and an estate in the same for the term of his contract, and consequently he has a right of property in the crop'."

All of the authorities cited by plaintiff in error are based upon fact situations where the owner of the land hired a laborer as a mere servant and agreed to pay him for his labor with a share of the crop which the laborer himself produced or helped produce. The situation in the instant case is different. Although the first tenant, Elder, was to pay for the rental of the land with a fractional part of the crop, he had a right of possession in the land; the landlord and Elder both testified that Elder leased the farm from Foster for the year 1933. Elder moved onto the farm, with his family. He then, as a tenant, agreed with Scott to form the partnership. Each was to expend his time and labor and each was to share equally in the proceeds. The landlord testified that both Scott and Elder in the spring of 1933 came to him and told him that they were forming the partnership. Elder did not deny this on the trial of the case. In the light of that evidence, the conclusion that a partnership existed, as distinguished from the ordinary "cropper" relationship, was warranted by the evidence.

The defendant Elder's next contention is that there was no contract, arrangement or agreement of any kind between any of the parties substituting the 18 acres which remained after defendant sold the first 18 acres to the government, for the undivided half which Scott had owned in the entire 36 acres, and that in order to come within the provisions of the law relative to substitution there must be an agreement between the parties whereby substitution is agreed upon. If that principle be applied to this case the result would be that Elder took and retained for his sole benefit the first 18 acres of the cotton, and then still owned an undivided half interest in the remaining 18 acres. There is no doubt that the rule cited by plaintiff in error is the law in this jurisdiction (Intertype Corporation v. Strosnider, 88 Okla. 68, 211 P. 1022) but the occasion for applying the rule nearly always arises from an instance where some party without notice

622

has been, or would be, injured by the substitution. Here there was no third party, or subsequent incumbrancer, without notice. It must be remembered that Elder himself is the person who caused the substitution. He knew that he owned, or would own when produced, only a half of the cotton on the entire premises. When he sold or plowed under the first 18 acres and retained the entire proceeds thereof himself, without sharing it with his partner, he was not in a position to urge that although he had received his half of the proceeds of the venture he was nevertheless entitled also to half of the remainder, on the ground that his partner, or his partner's mortgagee, had not consented to his taking the first 18 acres.

Had this controversy been between Elder and Scott, instead of between Elder and Scott's mortgagee, could Elder, after taking the first 18 acres, have maintained against Scott the contention that he, Elder, still owned an undivided half interest in the remaining 18 acres? Certainly not. If there was a substitution here, it was not created by Scott and his mortgagee, but was created by El der himself. He cannot then urge, under such circumstances, as against Scott's mortgagee, an argument that would not be good as against Scott. The fact that after Elder had taken the first 18 acres, he retained one-half of the proceeds of the two loads of cotton which he sold from the remaining 18 acres, and that Scott made no objection to this, does not change the result; it is only one of the facts in evidence, and although it is favorable to the contentions of Elder that he still owned an undivided half interest in the remaining 18 acres, it is not necessarily determinative of that issue.

In this connection the defendant Elder also points out that the first 18 acres were "plowed under" and that therefore Scott owned no interest in that 18 acres anyway, because he had not picked it. This argument is based upon the assumption that Scott was a cropper, which contention we have already ruled against. It appears that when the partnership was entered into Scott expected the opportunity of sharing in the proceeds from the entire crop, equally with his partner and there is no evidence that Scott ever voluntarily relinquished his interest in the first 18 acres, the proceeds from which were retained entirely by the defendant.

The third contention of the defendant is:

"Replevin would not lie in this action for the good reason that under our statute a replevin action is to recover possession of specific personal property and cannot be maintained for an undivided interest in property such as in question in this case."

This contention is predicated upon the preceding contention. Our view of the matter is that there had been a division of the respective property interests of Scott and Elder prior to the institution of this suit. The defendant himself caused that division when he appropriated the first 18 acres entirely to his own use and benefit.

The remaining assignments of the plaintiff in error have to do with refusal of the court to give certain requested instructions, and the giving of other instructions, and in overruling his demurrer to the evidence. The determining principles in connection with those assignments are the same as have already been herein discussed, therefore it is unnecessary to further discuss them. The principles of law cited by the plaintiff in error are fundamental, well established rules but are not applicable to the instant case. In short, we agree with the trial court that the evidence was sufficient to sustain the conclusion that Scott was a cotenant and copartner, and not a mere cropper, and that the defendant Elder, having himself forced the division and substitution upon the other parties, cannot now successfully contend that there was no division or substitution merely because he did not get the other parties' consent thereto. The judgment is affirmed.

McNEILL, C. J., and RILEY, BUSBY, and GIBSON, JJ., concur.