**AMERICAN NATIONAL BANK & TRUST COMPANY OF SAPULPA, Okla-homa, Plaintiff in Error,**

v.

**NATIONAL CASH REGISTER COMPANY and Security National Bank of Sapulpa, Oklahoma, Defendants in Error.**

**No. 42634.**

Supreme Court of Oklahoma.

July 21, 1970.

Loeffler & Allen, by Sam T. Allen, III, Sapulpa, for plaintiff in error.

Houston, Klein & Davidson, by L. Michael Hager, Tulsa, for defendant in error National Cash Register Co.

DAVISON, Justice.

This is an appeal by American National Bank and Trust Company of Sapulpa, Oklahoma (plaintiff in the trial court, herein referred to as American), from a judgment rendered against it and in favor of National Cash Register Company (National) and Security National Bank of Sapulpa (Security), whereby National was adjudged to have a superior security interest in a cash register, and Security was awarded a superior interest in an adding machine.

There appears to be no dispute as to the facts. A partnership, Thompson & Son (Thompson) either owned or operated with its own equipment, four service stations located in Okmulgee, Henryetta, east of Henryetta, and in Sapulpa, Oklahoma. All of the stations were in operation in December, 1965, except the station in Sapulpa, which was still in process of construction.

On November 19, 1965, Thompson had placed an order with National for future delivery of a cash register for use in the Sapulpa station.

On December 13, 1965, pursuant to the Uniform Commercial Code of Oklahoma, 12A O.S.1961, § 1–101 et seq., Thompson and American executed a security agreement to secure a loan from American to Thompson, in which Thompson granted to American as follows:

"* * * a security interest pursuant to the Uniform Commercial Code (Oklahoma) in and to the following described property, together with all replacements thereof and all accessories, parts and equipment now or hereafter affixed thereto or used in connection therewith, and if livestock or farm crops, said security interest includes all natural increase thereof, and whenever acquired:

"All equipment, cash registers, machinery, and tools used in operations of service stations at the following locations

6th and Wood Drive Okmulgee Okla

10th and West Main Henryetta Okla

Highway 75 East of Henryetta Okla 900 Block South Main Sapulpa Okla Partial list attached and made a part of this agreement."

Included in the above list were 2 NCR Adding Machines and 2 National Cash Registers, with no statement of identifying numbers.

On December 27, 1965, American filed with the Oklahoma County Clerk a financing statement with respect to the above security agreement reciting as follows:

"3.   This financing statement covers the following types (or items) of property.

"All equipment, cash registers, machinery & tools used in operating of service stations at the following locations:

6th and Wood Drive, Okmulgee, Okla.

10th & West Main, Henryetta, Oklahoma

Highway 75 East of Henryetta, Oklahoma

900 Block South Main, Sapulpa, Oklahoma"

The Sapulpa station commenced operations on or about January 16, 1966, and on that date National loaned and delivered a cash register to Thompson at the location for use until the prior ordered cash register was available for delivery.

In March, 1966, Security checked the equipment at the Sapulpa station, and thereafter, on March 9, 1966, Thompson and Security executed a security agreement to secure a loan from Security wherein Security was granted a security interest in personal property, located at the Sapulpa service station, consisting of:

"1957   Chevrolet   Pickup   ½   t.   Ser. # 3A57L119921

1—New adding Machine 2–951609 NCR" and other described equipment.

Security then filed of record a financing statement on March 11, 1966, in which the property description portion thereof consisted of the following language:

"1957 Chevrolet PU Ser. # 3A57L 119921 equipment"

On April 20, 1966, National delivered the previously ordered cash register to Thompson at the Sapulpa station and picked up the loaned machine. They entered into a purchase agreement on that date. This contract was filed of record as a financing statement on August 12, 1966.

In the meantime a Henryetta bank had challenged the priority of American's security interest in the personal property at the stations located in Okmulgee, Henryetta and east of Henryetta. This controversy was apparently settled when American, after examining the public records in early June, 1966, released its security interest in the personal property at the named stations on June 20, 1966, leaving in effect only the security interest it held in the personal property at the Sapulpa station.

Thompson defaulted with the situation in this condition. American's appeal presents two questions, (1) as between it and National, which has the prior security interest in the new cash register delivered to the Sapulpa station on April 20, 1966, and (2) as between it and Security, which has the prior security interest in the adding machine described in Security's security agreement. The trial court held against American in both instances.

American contends that under the provisions of the Uniform Commercial Code the lien of its security agreement upon the cash register was superior to the lien of National.

The record, supra, reflects that American's security agreement was executed December 13, 1965, and filed December 27, 1965, and that National's security agreement was executed April 20, 1966, being the day the cash register was delivered, and was filed more than 10 days thereafter, on August 12, 1966.

■   National's security agreement was for the purchase price of the cash register

and National could have perfected a prior lien thereon over any claim of American by filing its financing statement within the time required by the Commercial Code. Title 12A O.S.1961, § 9–302, requires that a financing statement must be filed to *perfect all* security interests except in certain instances that are not applicable in the present case. Title 12A O.S.1961, § 9–312 (4) provides that a purchase money security interest in collateral other than inventory has priority over a conflicting security interest in the same collateral if the purchase money security interest is *perfected* at the time the debtor receives possession of the collateral or *within* 10 days thereafter.

National did not perfect its purchase money security interest in the above manner. Under these circumstances, where both American and National had perfected their security interests by filing (but National had failed to qualify for the special priority given purchase money security interests), the Code, 12A O.S.1961, § 9–312 (5) (a), provides the priority between such conflicting security interests in the same collateral shall be in the order of filing.

American filed first, but there is the proposition of whether its security agreement may and does cover the cash register subsequently acquired by Thompson, and whether the financing statement filed by American is sufficient in this respect.

The Commercial Code, 12A O.S.1961, § 9–204(3), specifically states that "a security agreement may provide that collateral, *whenever acquired,* shall secure all obligations covered by the security agreement." (emphasis added) except in situations not present in the instant case.

■ American's security agreement, supra, in pertinent part grants a security interest "pursuant to the Uniform Commercial Code (Oklahoma) in and to the following described property together with all replacements thereof and all * * * equipment now or hereafter * * *

used in connection therewith, * * * and whenever acquired:

"All equipment, cash registers * * * used in operation of service stations at * * * 900 Block South Main Sapulpa, Oklahoma."

It is our conclusion that the above language embraces both replacements *and* after-acquired equipment *used* in connection with the described property, including "cash registers" *used* in the operation of the station in Sapulpa, Oklahoma.

■ This brings us to the question of the sufficiency of American's financing statement. This statement, supra, states in pertinent part that it covers "the following types (or items) of property.

"All equipment, cash registers, * * * used in operating of service stations at * * * 900 Block South Main, Sapulpa, Oklahoma."

American contends that under the Commercial Code and the authorities on the subject of the absence of specific words in the financing statement regarding a lien on after-acquired property did not make it insufficient to perfect a security interest in such property.

■ Title 12A O.S.1961, § 9–110 states that "any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described." Title 12A O.S.1961, § 9–402(1) provides that a financing statement is *sufficient* if it is signed by the debtor and the secured party, gives an address of the secured party "from which information concerning the security interest may be obtained," gives a mailing address of the debtor "and contains a statement indicating the types, or describing the items, of collateral." There is no statutory requirement that the financing statement have an after-acquired property clause.

In the official comment to § 9–402(1) there is the following statement: "This Section adopts the system of 'notice filing' which has proved successful under the Uni-

form Trust Receipts Act. What is required to be filed is not, as under chattel mortgage and conditional sales acts, the security agreement itself, but only a simple notice which may be filed before the security interest attaches or thereafter. The notice itself indicates merely that the secured party who has filed may have a security interest in the collateral described. Further inquiry from the parties concerned will be necessary to disclose the complete state of affairs. Section 9–208 provides a statutory procedure under which the secured party, at the debtor's request, may be required to make disclosure."

In National Cash Register Company v. Firestone, 346 Mass. 255, 191 N.E.2d 471, the situation was similar in some respects to that in the present appeal. There the court held that under the Uniform Commercial Code a financing statement that did not mention the after-acquired property provision in the security agreement would not deprive the lender of his lien on an after-acquired cash register, where the financing statement (in the identical words of the security agreement) described the property as, "All contents of luncheonette including equipment such as : * * *" and then described certain restaurant equipment. The after-acquired property provision in the security agreement covered all property and articles "now, or which may hereafter be, used or mixed with," added or attached, or substituted for the described property. Neither instrument mentioned a cash register. In arriving at the conclusion that the financing statement need not contain the after-acquired property clause, the court relied on the Massachusetts statute (same as our § 9–402(1), supra) and the above quoted official comment.

■ The above decision stated that the framers of the Uniform Commercial Code, by adopting the "notice filing" system, had the purpose to recommend a method of protecting security interests which at the same time would give subsequent potential creditors and other interested persons information and procedures adequate to enable the ascertainment of the facts they needed to know. The court stated that in view of the broad purposes of the act it would not give a restrictive construction to the provisions which sets forth what constitutes a "sufficient" financing statement. In conclusion the court held that the words, "All contents of luncheonette including equipment such as : * * *." were enough to put the seller of the cash register on notice to ascertain what those contents were. It stated this was not a harsh result because a statute (same as our 12A O.S.1961, § 9–312(4) supra) provided a simple and sure procedure by which the seller of the cash register could have completely protected its purchase money security interest.

For similar or related discussion and conclusions, see In Re Platt, 257 F.Supp. 478 (E.D.Pa.1966) ; South County Sand & Gravel Co. v. Bituminous Pavers Co. (R.I.) 256 A.2d 514; and Evans Products Company v. Jorgensen, 245 Or. 362, 421 P. 2d 978. See also Annotation Uniform Commercial Code—Article 9, 30 A.L.R.3rd 9, 62, 63.

American's financing statement in the instant case complies with the requirements of 12A O.S.1961, § 9–402(1). It specifically enumerates cash registers as a *type* of collateral, and identifies the same as those used in operating service stations, including the station in Sapulpa. Under this system of "notice filing" National was put on notice that American might have a security interest in such collateral and that National should ascertain the complete state of affairs. With or without such investigation National could have protected its purchase money security interest by filing the cash register purchase agreement within 10 days after delivery of the machine. § 9–312(4), supra.

National cites the pre-code cases of Intertype Corporation v. Strosnider, 88 Okl. 68, 211 P. 1022, and Hivick v. Oklahoma-Colorado Oil & Gas Co., 89 Okl. 181, 212 P. 420, as a guide to determine the sufficiency of the financing statement in the

present case. These cases held that the language in a chattel mortgage must show an intention to cover after-acquired property, and the latter case said this must be by apt and clear language. These cases are not applicable to a financing statement under the Code. Our views as to the function and sufficiency of the financing statement are set out above.

It is our conclusion that American has a prior security interest in the cash register and that the trial court erred in holding otherwise.

We now turn to the matter of whether American or Security has a prior lien upon the adding machine. Our prior discussion and conclusions dispose of this controversy with respect to the after-acquired features of American's security agreement and to a considerable extent regarding the function and sufficiency of American's financing statement.

The American financing statement did not indicate "adding machine" as a type of collateral, just as the financing statement in the Firestone & Co. case, supra, did not specifically refer to "cash registers." However, the financing statement in the present case does recite "All Equipment" used in operation of service stations at certain locations, including· the Sapulpa station. In this respect the present situation is like that in the Firestone & Co. case in which the financing statement recited "All contents of luncheonette including equipment such as: * * *." It was there held that this covered the after-acquired cash register and was sufficient to put a person on notice that he should ascertain the provisions of the prior security agreement. We think this reasoning and conclusion is applicable to Security, particularly in view of the fact that it inspected the equipment at the Sapulpa station before making its loan to Thompson and was informed by him that a prior security covered some of the equipment.

We conclude that American had a prior security interest in the adding machine.

The trial court erred in holding that Security had a prior lien.

The judgment is reversed in the above particulars and the cause is remanded with directions to render judgment for American National Bank and Trust Company pursuant to the views herein expressed.

IRWIN, C. J., BERRY, V. C. J., and BLACKBIRD, JACKSON, HODGES, LAVENDER and McINERNEY, JJ., concur.