(699 P.2d 1040)

No. 57,071

UNITED COOPERATIVES, a corporation, *Appellant*, v. LIBEL OIL COMPANY, INC., *Defendant*, and VALLEY STATE BANK, *Intervenor-Appellee*.

Opinion filed May 23, 1985.

*Timothy J. Carmody*, of Lenexa, and *J. Michael Murphy*, of Liberty, Missouri, for the appellant.

*Richard L. Reid*, of Kansas City, for the appellee.

Before BRISCOE, P.J., REES, J., and HARRY G. MILLER, District Judge Retired, Assigned.

BRISCOE, J.: United Cooperatives, the plaintiff, appeals a judgment which held its claim to defendant Libel Oil's accounts receivable to be subordinate to the security interest of Valley State Bank, the intervenor.

Libel Oil borrowed $115,000 from Valley State Bank in June, 1980. The parties signed a security agreement giving the Bank a security interest in "All Accounts Receivable now owned or hereafter acquired."

The Bank filed a financing statement with the Atchison County Register of Deeds on June 18, 1980. The financing statement described the collateral as "Accounts receivable (as

per attached)." Attached to the financing statement was a list of Libel Oil's accounts receivable as of May 30, 1980, which included the name of each account followed by an amount. The loan and security agreement were renewed on July 30, 1982.

Meanwhile, United Cooperatives had sued Libel Oil to collect a $115,909.91 debt. The trial court entered judgment for the plaintiff on August 30, 1982. When the Co-op sought garnishment of Libel's accounts owed by the debtors named in the financing statement attachment, the Bank intervened, claiming a prior perfected security interest in the accounts.

The trial court found that the Bank's security interest covered both present and future accounts receivable and held the Co-op's claim subordinate to the Bank's security interest.

The issue raised by the Co-op is whether the collateral description in the financing statement was sufficient to perfect a security interest in Libel Oil's after-acquired accounts receivable.

K.S.A. 84-9-402(1) requires that a financing statement:

"shall contain a statement indicating the types, or describing the items, of collateral. A statement of collateral in a financing statement is adequate if it generally identifies goods by one or more of the classifications listed in K.S.A. 84-9-109, or generally identifies other collateral by one or more of the following classifications: fixtures, documents, instruments, general intangibles, chattel paper or accounts. A statement of collateral in a financing statement shall not be deemed inadequate solely because it is broader than, or otherwise differs from, that found in the security agreement."

K.S.A. 84-9-402 should be read together with K.S.A. 84-9-110, which provides that "any description of personal property . . . is sufficient whether or not it is specific if it reasonably identifies what is described." The 1983 Kansas Comment to K.S.A. 84-9-110 states: "[T]he *test of sufficiency is whether it makes possible the identification of the thing described* for the benefit of third parties searching the files. . . . Even though the filing lacks details, *if it gives clues sufficient that third persons by reasonable care and diligence may ascertain the property covered,* the courts should uphold the description." (Emphasis added.)

In *Allis-Chalmers Cred. Corp. v. Cheney Investment, Inc.*, 227 Kan. 4, 8, 605 P.2d 525 (1980), the court explained the purpose of a financing statement:

"The notice itself indicates merely that the secured party may have a security

interest in the collateral described. The burden is placed upon other persons to make further inquiry from the parties concerned in order to obtain a disclosure of the complete state of affairs. The code philosophy is that a simple, filed notice that the secured party and debtor may be financing with respect to collateral described in the financing statement should be a 'red flag' warning to third parties not to proceed with any financing on the same collateral of the debtor until investigation is made to see that the road ahead has been cleared."

See Official UCC Comment to K.S.A. 84-9-402.

United Co-op contends that the collateral description in the financing statement was not sufficient to cover accounts receivable generated after May 30, 1980.

As the accounts in dispute were all from customers on the list attached to the financing statement, and were for amounts less than were due on May 30, 1980, it is possible that the disputed accounts receivable were not after-acquired property. The trial court, however, took no evidence to resolve the factual question of when the accounts receivable were generated. Instead, the court decided the legal issue of whether the financing statement was sufficient to perfect the Bank's security interest in the accounts, assuming that they were after-acquired property.

The Co-op argues that because the financing statement did not mention after-acquired accounts, and listed specific accounts due on a specific date, it could not give third parties notice that after-acquired accounts were subject to a security interest.

The parties agree that the security agreement signed by Libel Oil and the Bank included after-acquired accounts receivable. After-acquired property is not only proper collateral to secure an obligation (K.S.A. 84-9-204), but also its inclusion in a security agreement can be accomplished by a mere general or blanket reference, such as "after-acquired accounts receivable." *Grain Merchants of Ind. v. Union Bank & S. Co., Bellevue, Ohio,* 408 F.2d 209, 212-16 (7th Cir.), *cert. denied* 396 U.S. 827 (1969).

The omission of an after-acquired property clause from the financing statement was not fatal here. Where it is the nature of the type of property described to change from day to day, a financing statement that accurately describes the type of property but omits any reference to after-acquired property is sufficient to give third parties notice that after-acquired property of the type described may be subject to a security interest under K.S.A. 84-9-204. Official UCC Comment to K.S.A. 84-9-402; Annot., 100 A.L.R.3d 10, § 23(c). See *e.g., National Cash Register*

*Co. v. Firestone & Co. Inc.*, 346 Mass. 255, 191 N.E.2d 471 (1963); *James Talcott, Inc. v. Franklin National Bank*, 292 Minn. 277, 194 N.W.2d 775 (1972); *American Nat. B. & T. Co. v. National Cash Register Co.*, 473 P.2d 234, 237-39 (Okla. 1970).

Accounts receivable by their very nature change from day to day. A description of collateral which includes "accounts receivable" is a sufficient "red flag" warning to third parties to perfect a security interest in after-acquired accounts receivable. It would be unreasonable for the Co-op to conclude that the Bank would collateralize its loan with a security interest in accounts due only on a specific date. Collection of the accounts by the debtor in the normal course of business would reduce the collateral to nothing unless the creditor also had a security interest in after-acquired accounts and inventory.

In *In re Platt*, 257 F. Supp. 478 (E.D. Pa. 1966), the security agreement covered present and future accounts and inventory, but the financing statement described the collateral only as "inventory and accounts receivable." The court held the financing statement sufficient to perfect the security interest in after-acquired accounts and inventory, stating:

"A detailed description of the collateral in the case of accounts and inventory would require the filing of daily statements. The addition of the word 'future' to 'accounts receivable and inventory' would not seem to help an interested party in determining the status of the debtor. It should be clear that the creditor is concerned with tying up whatever is the current inventory and accounts receivable of the debtor. No reasonable searcher of the records would conclude that the secured party had a lien on only the past accounts and inventory of the debtor, especially where the debtor is in an active retailing business." 257 F. Supp. at 481.

See Annot., 100 A.L.R.3d 10, § 23(c); contra *In re Middle Atlantic Stud Welding Co.*, 503 F.2d 1133 (3d Cir. 1974). The same reasoning applies here despite the attachment to the financing statement of the list of accounts receivable due on a specific date.

Had the Co-op garnished accounts receivable from *unlisted* customers, its argument that the accounts were not subject to the Bank's security interest might be more compelling. See *Interstate Steel Co. v. Ramm Mfg.*, 108 Ill. App. 3d 404, 64 Ill. Dec. 62, 438 N.E.2d 1381 (1982); *Georgia-Pacific Corp. v. Lumber Products Co.*, 590 P.2d 661 (Okla. 1979). But see *Thorp Com. Corp. v. Northgate Indus.*, Inc., 654 F.2d 1245 (8th Cir. 1981). But because it is in the nature of accounts receivable to turn over

constantly, a third party would have reason to think that any accounts receivable from a *listed* creditor might be subject to a security interest.

Affirmed.