(943 P.2d 511)
No. 76,785

TURNBULL OIL, INC., *Appellee*, v. N-B COMPANY, INC., d/b/a EMPHASIS OIL OPERATIONS, *Appellee*.

SUNFLOWER BANK, N.A., Russell, Kansas, *Intervenor/Appellant*.

Opinion filed August 15; 1997.

*Dennis R. Davidson*, of Thompson, Arthur & Davidson, of Russell, for appellant.

*Charles N. Henson*, of Wright, Henson, Somers, Sebelius, Clark & Baker, L.L.P., of Topeka, for *amicus curiae* the Kansas Bankers Association.

Before BRAZIL, C.J., RULON and GERNON, JJ.

RULON, J.: Intervenor Sunflower Bank appeals the district court's finding that it lost the perfection of its security interest in the accounts receivable of N-B Company, Inc., d/b/a Emphasis Oil Operations (N-B), when Sunflower failed to refile a financing statement to reflect a subsequent name change. We reverse.

The facts are not in dispute.

On April 10, 1992, the First National Bank and Trust of Russell, Kansas, filed a financing statement with the Kansas Secretary of State, claiming a security interest in all the accounts receivable of N-B. In January 1993, First National Bank and Trust filed a copy of a corporate resolution with the register of deeds of both Russell County and Rooks County, reflecting the fact that it had changed its name to Sunflower Bank (Sunflower). Sunflower did not file a subsequent filing statement reflecting the change. The bank's address did not change.

On March 16, 1994, N-B granted a security interest in its accounts receivable to Sunflower. On January 9, 1995, and January 31, 1995, Sunflower loaned $15,040 and $27,040, respectively, to N-B and accepted a promissory note signed by N-B in return, which referred to the prior security agreement.

On May 17, 1995, plaintiff Turnbull Oil, Inc., obtained a judgment against N-B in the amount of $91,991.16. On July 24, 1995, Turnbull obtained an order of garnishment against a customer of N-B, Terrol Energy, Inc., for an amount owing to N-B. On October 17, 1995, Sunflower moved to intervene in the matter, claiming a prior perfected security interest in the Terrol account.

A hearing was conducted on the matter, and the district court determined that Sunflower no longer had a perfected security interest in the accounts receivable of N-B because it had failed to amend the financing statement to reflect its name change.

Turnbull chose not to respond to Sunflower's appeal in this case, but the Kansas Bankers Association has filed an *amicus curiae* brief.

This case presents a question of law, over which this court has unlimited review. See *Memorial Hospital Ass'n, Inc. v. Knutson*, 239 Kan. 663, 668, 722 P.2d 1093 (1986). Further, this is an issue of first impression in Kansas.

The district court denied Sunflower's claim of priority to the funds at issue in this case, finding that Sunflower's failure to amend the financing statement to reflect its name change resulted in a serious defect which defeated Sunflower's priority in N-B's accounts receivable. The court stated that it had uncovered no au-

thority on the issue, but cited *LMS Holding Co. v. Core-Mark Mid-Continent, Inc.*, 50 F.3d 1520 (10th Cir. 1995), for the proposition that "the change of name after the filing of a security interest does not give substantial notice to other parties, when the name is changed to such a degree that one could not determine that the institution is one and the same."

However, we understand that *LMS* discusses the issue of a name change as such pertains to the debtor, not the secured party. Referring to UCC § 9-402(7) of the Uniform Commercial Code, the *LMS* court briefly noted the duty of the secured party to refile a financing statement in the event that the debtor changes his or her name, or an organization changes its name, identity, or corporate structure. However, the central issue in *LMS* was whether a secured party's interest in collateral which has been transferred to another debtor remains perfected as to the after-acquired property of the transferee. 50 F.3d at 1523-24.

K.S.A. 84-9-402(1) sets out the formal requisites of a financing statement: the names and addresses of the secured party and the debtor, the signature of the debtor, and a description of the collateral. K.S.A. 84-9-402(7) contemplates a name change of the debtor:

"Where the debtor so changes the debtor's name or in the case of an organization, its name, identity or corporate structure that a filed financing statement becomes seriously misleading, the filing is not effective to perfect a security interest in collateral acquired by the debtor more than four months after the change, unless an amendment to the financing statement is filed before the expiration of that time."

Additionally, K.S.A. 84-9-402(8) provides that "[a] financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading."

In *Pearson v. Salina Coffee House, Inc.*, 831 F.2d 1531 (10th Cir. 1987), the court discussed at length the importance of using a debtor's legal name when filing a financing statement, as opposed to a trade name, noting the fact that financing statements are indexed according to the *debtor's* name and that a trade name, if it substantially differs from the corporate name, may be seriously

misleading. See Official UCC Comment and Kansas Comment to K.S.A. 84-9-402. The court said:

"The rigid requirement that a debtor's legal name be used on the financing statement furthers the objectives of the UCC filing system for secured transactions. The purpose behind the filing provisions is to provide notice to subsequent creditors in a manner which will give such creditors confidence that they are aware of any prior security interests in the collateral that may be superior to their own interest. Clarity and certainty in lien perfection requirements are lost if equitable exceptions are created which permit trade name filings to replace filings in the legal name when the 'equities' so dictate." *Pearson*, 831 F.2d at 1536.

Accordingly, K.S.A. 84-9-402(7) clearly provides that it is crucial that a secured party refile or amend a financing statement, should the *debtor* at some point acquire a new name or corporate identity. However, other than setting out the "minor errors" rule in subsection (8), the statute does not otherwise provide for a situation involving a name change of the secured party.

In *United Cooperatives v. Libel Oil Co.*, 10 Kan. App. 2d 427, 428-29, 699 P.2d 1040 (1985), this court discussed, generally, the purpose of filing a financing statement:

" 'The notice itself indicates merely that the secured party may have a security interest in the collateral described. The burden is placed upon other persons to make further inquiry from the parties concerned in order to obtain a disclosure of the complete state of affairs. [See K.S.A. 84-9-208.] The code philosophy is that a simple, filed notice that the secured party and debtor may be financing with respect to collateral described in the financing statement should be a "red flag" warning to third parties not to proceed with any financing on the same collateral of the debtor until investigation is made to see that the road ahead has been cleared.' " (Quoting *Allis-Chalmers Cred. Corp. v. Cheney Investment, Inc.*, 227 Kan. 4, 8, 605 P.2d 525 [1980].)

The effect of an error in the secured party's name is discussed in American Jurisprudence:

"Because financing statements are indexed according to the name of the debtor, a mistake in the creditor's name is ordinarily not important. The designation of an assignee of the security interest when in fact there has not been any assignment has also been held not seriously misleading. However a defect in the name of the creditor when the creditor's address is omitted is seriously misleading because it makes it impossible to inquire of the creditor and places the third person at the mercy of such information as the debtor chooses to furnish." 68A Am. Jur. 2d, Secured Transactions § 347, pp. 301-02.

American Jurisprudence then goes on to discuss the importance of including a sufficient address for the secured party in the financing statement and states:

"Generally, an address given in a financing statement is sufficient if it would enable a prudent person using reasonable care to locate the secured party. An address is sufficient when a person can communicate with the creditor at that address by mail, as there is no requirement that an address be given at which oral communication may be made. A post office box is a sufficient address of the creditor if it gives an interested person the means of communicating with the creditor, and the sufficiency of a post office box address cannot be attacked by one who offers no evidence of its insufficiency and who has not attempted to communicate by writing to that address." 68A Am. Jur. 2d, Secured Transactions § 348, p. 302.

See also 79 C.J.S., Secured Transactions § 66, p. 461 ("Perfect accuracy in identifying the secured party in a financing statement is not required as long as sufficient information is provided to enable a prudent examiner of the record to ascertain the exact state of affairs through further inquiry.").

Review of case law in other jurisdictions reveals that under the "minor errors" rule of UCC § 9-402(8), an error in the secured party's name on the financing statement is not fatal as long as it is not seriously misleading. See *Matter of Confabco, Inc.*, 178 Bankr. 421 (E.D. La. 1995) (listing of agent of secured party, rather than secured party, on financing statement not misleading); *In re Bumper Sales, Inc.*, 907 F.2d 1430 (4th Cir. 1990) (secured party's use of trade name as opposed to legal name was not seriously misleading under the circumstances); *In re Heritage House Interiors, Inc.*, 122 Bankr. 605 (M.D. Fla. 1990) (change in secured party's name not seriously misleading in light of fact that address did not change and reasonable inquiry would have revealed correct secured party); *In re Wilco Forest Machinery, Inc.*, 491 F.2d 1041 (5th Cir. 1974) (fact that corporate secured party had merged into new corporation subsequent to filing of financing statement held not seriously misleading under the circumstances); *In re Colorado Mercantile Co.*, 299 F. Supp. 55 (D. Colo. 1969) (fact that creditor was erroneously identified in the financing statement was not seriously misleading since corporation holding security interest and

corporation listed on financing statement were so closely related); but see *In re Clarence Graphics, Inc.*, 201 Bankr. 46 (W.D. N.Y. 1996) (court held that secured party failed to perfect his security interest in debtor's collateral by listing his corporate identity on the financing statement rather than his personal identity; thus, error in secured party's name was not considered minor); *In re Copper King Inn, Inc.*, 918 F.2d 1404 (9th Cir. 1990) (failure to list one of three secured parties on financing statement resulted in failure to perfect omitted party's security interest).

The question of whether under K.S.A. 84-9-402(8) an error is minor, so as not to be seriously misleading, is to be determined on a case-by-case basis.

Under the facts presented, although Sunflower neglected to amend or to refile its financing statement in this case, following its name change, such error is not seriously misleading in light of the fact the bank's address did not change. Consequently, sufficient information was provided so that the exact state of affairs regarding Sunflower's interest in N-B's collateral could have been easily ascertained through further inquiry. We conclude the financing statement here adequately served its purpose of putting subsequent creditors of N-B on notice that a prior perfected security interest might exist in N-B's accounts receivable.

Reversed and remanded for further proceedings consistent with this opinion.