In the Matter of PASCO SALES CO., INC. NEW YORK CREDIT MEN'S ADJUSTMENT BUREAU, INC., Appellant-Respondent; HEMPSTEAD BANK, Respondent-Appellant.

Second Department, May 10, 1976

*Sunshine & Sunshine, P.C. (Robert W. Slott* of counsel), for appellant-respondent.

*Dalton & Henoch (Ronald Kadin* of counsel), for respondent-appellant.

COHALAN, J. The Hempstead Bank (the bank) has appealed from an order of the Special Term, Supreme Court, Queens County, dated August 19, 1974, wherein that court, upon reargument, denied its motion to compel the New York Credit

Men's Adjustment Bureau, Inc. (the assignee) to turn over to it the sum of $11,186.62 held by the assignee in escrow.*

On February 26, 1970 an entity styling itself "Pacific Supply Co., division of P. S. C. Products Corp.", entered into an inventory loan agreement with the bank. In due course the bank advanced moneys pursuant to the agreement.

In purported compliance with section 9-401 (subd [1], par [c]) of article 9 (Secured Transactions) of the Uniform Commercial Code, the bank filed notice of its security interest with both the New York Secretary of State and the Register of Queens County. The signature of Sidney Grant, an officer of the debtor-assignor, appeared on the notice under the same legend as is set forth above.

A clerk in the office of the Secretary of State, although not required by law so to do, filed and cross-indexed the document against the trade (Pacific Supply Co.) and corporate (P. S. C. Products Corp.) names. The Register, in literal compliance with the statute, filed the statement only as it appeared in the financing statement and did not cross-index it against the corporate name.

Insofar as double filing is concerned, section 9-401 (subd [1], par [c]) of the Uniform Commercial Code requires that "if [as herein] the debtor has a place of business in this state and in only one county of this state", the instrument must also be filed in that county. This requirement serves to expedite a search made by an interested local party and saves the time, trouble and expense of communicating with the Department of State.

On April 14, 1971 P. S. C. Products Corp. changed its name to Pasco Sales Co. Inc. (Pasco). Although it notified neither the Secretary of State nor the Queens County Register by way of a supplemental filing, the bank was aware of the change and raised no question concerning it. On November 12, 1973 Pasco filed an assignment for the benefit of creditors (see Debtor and Creditor Law, § 3). The bank, claiming as a secured creditor, immediately demanded the return of its money. The assignee refused to honor the demand. It based its refusal on section 9-301 of the Uniform Commercial Code, which reads that:

"(1) Except as otherwise provided * * * an unperfected security interest is subordinate to the rights of * * *

---

* The assignee has appealed from the original order which granted the bank's motion. As noted *infra,* that order was superseded by the order made on reargument.

"(b) a person who becomes a lien creditor without knowledge of the security interest and before it is perfected".

By stipulation of the bank and the assignee, the latter sold the Pasco inventory at public auction for approximately $30,000 and is holding the amount claimed by the bank in escrow pending the outcome of the litigation.

The position of the bank on this appeal is that it filed properly under subdivision (1) of section 9-402 which provides that: "A financing statement is sufficient if it is signed by the debtor and the secured party, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral."

The claim of compliance begs the question. The statement was not signed by the debtor. The debtor at bar (Pasco) was a corporation fortuitously identified in the Secretary of State's office as P. S. C. Products Corp., but not so identified in the office of the Register. The assignee is a creature of the court. It was in no way privy to the loan arrangements of the assignor and the bank, and was under no obligation to do more than it did. As noted in *Matter of Leichter* (471 F2d 785, 787-788 [CA 2d, 1972]): "In this regard, the trustee in bankruptcy must be deemed to stand in the shoes of the most favored creditor, not simply one who could—by virtue of his dealings with the debtor acting under his trade name—be held to a semblance of knowledge of the true facts; even such a creditor, knowing how UCC § 9-402 reads, might never search the filings under the trade name. That is to say, the trustee is more than a subsequent creditor seeking to build up his own equities at the expense of good faith creditors. Here the assignee of the filing creditor seeking to be secured over others, engaged in the financing business so that it should surely be familiar with the requirements of the Code, must be held to substantial compliance with the notice statute. Filing under the trade name only, we hold, was insufficient." For "trustee in bankruptcy" substitute "assignee", and the statement becomes pertinent at bar.

In support of its position, the bank cites *Matter of Royal Electrotype Corp.* (485 F2d 394 [CA 3d, 1973]), wherein a filing officer, by mistake, transposed debtor and creditor and indexed against the latter. In *Royal Electrotype,* it was properly held that the mistake should not militate against the creditor.

Here, however, the filing officer (the Register) did exactly what he was called upon to do.

The bank, also, advances the case of *Matter of Bengtson* (3 UCC Rptg Serv 283, 284 [US Dist Ct, Dist of Conn.]), where the words "Bruce's Vernon Circle Serv." appeared in the debtor's box, but the debtor's signature—in its proper place—appeared as "Bruce R. Bengtson", the actual name of the debtor. There, the court held that the filing was proper and that Bengtson had been properly identified. Such a situation does not obtain at bar, where only by happenstance would a searcher be led to the proper debtor.

In *Matter of Green Mill Inn* (474 F2d 14 [CA 9th, 1973]), also cited by the bank, a California statute was involved. It differed from the instant New York statute because California employed a cross-indexing system against an individual and a corporate name. Hence, it has no application to our factual situation.

We regard the cases cited as readily distinguishable, and find more persuasive the holdings in cases cited by the assignee. Specifically, we rely upon *Matter of Leichter (supra)* and on *Matter of Thomas* (466 F2d 51 [CA 9th, 1972]).

In *Leichter* the debtor registered a trade name as "Landman Dry Cleaners" with the Kings County Clerk. The creditor filed its financing statement against the trade name and not against "Leichter", although Leichter himself signed the statement in the appropriate place. In reversing the District Court and sustaining the position of the Referee in Bankruptcy, the United States Court of Appeals, construing the New York statute, noted (471 F2d, at p 787): "In our case * * * would a subsequent creditor looking under 'Leichter' be led to find the security interest filed and indexed under 'Landman'? We think not, even though Leichter apparently did his business under the trade name. * * * Recently the Ninth Circuit Court of Appeals added its weight to this construction of UCC § 9-402, where it held that filing against a debtor named Thomas under his trade name of 'West Coast Avionics' was ineffective."

In *Matter of Thomas (supra)*, the financing statement was filed under the name "West Coast Avionics", a trade name used by the bankrupt, Burris Haley Thomas. The creditor claimed the error was minor. The United States Court of Appeals, brushing this argument aside, wrote (466 F2d, at p

52): "If the debtor's name is not given, the purpose of the statutory scheme of requiring security interest to be perfected by filing a financing statement—to give notice to future creditors of the debtor—would be seriously undermined * * * we hold only that the omission of a debtor's real name is a fatal defect."

In our own State, we have the case of *Deere Co. v Pahl Constr. Co.* (34 AD2d 85). There a financing statement was filed with the State Department on a nonofficial or home-made form. The writing was almost illegible. A clerk in the State Department read the debtor's name as Ranelli, although the actual name was Ranalli. Even though an acknowledgement was sent to the creditor, the mistake was not caught. The Fourth Department, relying on section 9-301 (subd [1], par [c]) of the Uniform Commercial Code, held the statement invalid as against future creditors. (See, also, *Matter of Platt,* 257 F Supp 478, 482; *Matter of Eichler,* 9 UCC Rptg Serv 1400 [US Dist Ct, ED Wis].)

Based upon the rationale delineated in these cases, we hold that the defect in filing is fatal to the bank's claim; accordingly, we affirm.

The assignee contends on its appeal from the order dated April 22, 1974 that, when the change of corporate name was effected by the assignor, a new filing under the Uniform Commercial Code was required. Special Term disagreed and at that time—prior to reargument—held that the bank had a perfected security interest superior to the lien of the assignee and ordered the latter to turn over the moneys at issue. That order was superseded by the order made upon reargument and, accordingly, the appeal therefrom is dismissed.

HOPKINS, Acting P. J., CHRIST and TITONE, JJ., concur; SHAPIRO, J., concurs in the result.

Appeal from the order of the Supreme Court, Queens County, dated August 19, 1974, and made upon reargument, affirmed.

Appeal from the order of the same court, dated April 22, 1974, dismissed as academic. That order was superseded by the order made on reargument.

The appellant-respondent is awarded one bill of $50 costs and disbursements to cover both appeals.