In re COHUTTA MILLS, INC., Debtor.

Howard W. JONES, Trustee in Bankruptcy of Cohutta Mills, Inc., Plaintiff–Appellant,

v.

SMALL BUSINESS ADMINISTRATION, Defendant–Appellee.

Civ. A. No. 4:89–CV–56–HLM.

United States District Court, N.D. Georgia, Rome Division.

Dec. 12, 1989.

Howard W. Jones, Office of Howard W. Jones, Calhoun, Ga., trustee.

Dennis M. Hall, Office of U.S. Trustee, Atlanta, Ga., for U.S. Trustee in bankruptcy.

James Randolph Schulz, Office of U.S. Atty., Atlanta, Ga., for Small Business Admin.

Joseph Morgan Seigler, Jr., Rogers Magruder Sumner Brinson & Seigler, Rome, Ga., for Cohutta Mills, Inc.

William Lee Rothschild, Wildman Harrold Allen Dixon & Branch, Atlanta, Ga., for Beaulieu of America, Inc.

## ORDER

HAROLD L. MURPHY, District Judge.

### Facts and Procedural History

Bankruptcy Trustee Jones appeals the Bankruptcy Court's decision that the Small Business Administration (SBA) has a perfected security interest in personalty of Bankruptcy Debtor Cohutta Mills, Inc. The trustee had honored the SBA's claim to a security interest in realty, but objected to the SBA's claim to a security interest in personalty on the ground that it was not perfected.

The Bankruptcy Court held a hearing on the trustee's objection, where it heard argument from counsel and testimony from a representative of SBA, and received documentary evidence. The proof adduced

shows that, in 1977, King's Tuft, Inc. borrowed money from Cohutta Banking Company (Cohutta Bank), and the loan was guaranteed by SBA. Cohutta Bank secured the note with equipment, machinery, and after-acquired property of King's Tuft and filed financing statements that perfected its interests.

In 1979, Cohutta Bank assigned the note and security interests to SBA, and filed statements reflecting those assignments.

Subsequently, to resolve financial problems of King's Tuft, its owners created a new corporation, Cohutta Mills, and transferred King's Tuft's assets to Cohutta Mills. On April 22, 1980, Cohutta Mills entered into an "Assumption Agreement" wherein it assumed King's Tuft's obligations under SBA's note. In the same document, SBA consented to the transfer on the condition that Cohutta Mills assumed those obligations. King's Tuft ceased to exist at that point.[1]

Cohutta Mills had the same president as King's Tuft and pursued the same line of business at the same location using the same machinery and equipment. SBA did not file new financing statements when the new corporation was formed, although it did send letters to King's Tuft's creditors. Approximately two years later, on August 16, 1982, SBA filed a continuation statement indicating that it retained a security interest in the property of King's Tuft. Cohutta Mills filed for bankruptcy on February 6, 1987.

### Issue on Appeal

■ Under 11 U.S.C. § 544(a)(1), a bankruptcy trustee has the rights of a hypothetical lien creditor as of the filing of the bankruptcy petition. The rights of a lien creditor are determined pursuant to state law. *In re Kors, Inc.*, 819 F.2d 19, 22–23 (2d Cir.1987); *Matter of Chaseley's Foods, Inc.*, 726 F.2d 303, 307 (7th Cir.1983). Under Georgia's version of the Uniform Commercial Code (hereinafter referred to as "UCC"), a lien creditor has priority over an unperfected, though secured, creditor. Ga. Code Ann. § 11–9–301(1)(b), (3). In the bankruptcy context, therefore, if the secured creditor's interest is not perfected, the creditor "stands as [a] general unsecured creditor who must defer to the trustee." *In re Merts Equipment Co.,* 438 F.Supp. 295, 298 (M.D.Ga.1977).

### The Parties' Arguments

The trustee argues that SBA's interest is unperfected because SBA filed the continuation statement in the name of King's Tuft instead of Cohutta Mills. He stresses that Cohutta Mills was a new corporation, as opposed to change of name of King's Tuft, and reasons that a prospective creditor searching the files under the name of Cohutta Mills would not locate SBA's interest.

The trustee argues further that Cohutta Mills assumed SBA's note and *not* the security agreement and that, in any event, a security interest would not attach to after-acquired property of Cohutta Mills. Lastly, the trustee claims the SBA breached a contractual agreement to file financing statements in the name of Cohutta Mills.

SBA responds that it was not required to file a new financing statement when the property was transferred and that its continuation statement was effective. SBA

1. At the hearing, the trustee explained the situation as follows:

 There was an assumption agreement whereby King's Tuft transferred its debt to Cohutta Mills, Inc. And SBA signed off as one of the parties agreeing to this assumption. So, this takes place in April 22 of 1980.

 King's Tuft is no longer in business. They either, you know, went out of business on or about this period of time, dissolved. I checked the bankruptcy file. They did not file bankruptcy.

 Hearing Transcript at 11–12. Mr. Turner, a loan specialist with SBA, testified that he understood the purpose of the transaction as follows:

 King's Tuft had encountered financial difficulty.... The president, Mr. Browen at that time, ... was wanting to work out some type of situation. It, to the best of my recollection, was maybe do something in a new corporate name that would cut off some unsecured creditors carrying forward the assets of the King's Tuft Corporation subject to the indebtedness of the SBA loan.

 *Id.* at 22. Mr. Turner testified further that the parties wanted to "restructure" the corporation to "gain a positive net worth position to allow them to obtain working capital financing." *Id.* at 23–24.

818

contends further that this Court cannot consider the trustee's argument concerning after-acquired property because the trustee did not develop a factual record thereon.

## Discussion

### 1. Did Cohutta Mills acquire King's Tuft's property subject to SBA's security interest?

■ "A security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise." Ga. Code Ann. § 11–9–306(2). In the instant case, SBA, the secured party, clearly authorized the disposition of the collateral from King's Tuft to Cohutta Mills. At first glance, therefore, it would seem that the security interest did not continue in the collateral.

However, Ga.Code Ann. § 11–9–402(7) provides that "a filed financing statement remains effective with respect to collateral transferred by the debtor even though the secured party knows of or consents to the transfer." This language conflicts with § 9–306(2) insofar as it assumes that a security interest can remain perfected after a transfer even if the secured party has consented to, *i.e.*, authorized, the transfer.

The conflict between these sections has been resolved in different ways by the courts:

Several decisions ... hold that a transfer of collateral is not 'authorized' under § 9–306(2) if the secured party consents to the transaction on the condition that its security interest continues after transfer. *See, e.g., Wegner v. Grunewaldt,* 821 F.2d 1317, 1320–22 (8th Cir. 1987); *Loeb v. Franchise Distributors, Inc. (In re Franchise Systems, Inc.),* 46 B.R. 158 (Bankr.N.D.Ga.1985); *Richmond Fixture & Equipment Co. v. Hyman (In re Southern Properties, Inc.),* 44 B.R. 838 (Bankr.E.D.Va.1984). These

courts believe that treating such conditional consent as authorization under § 9–306(2) is highly artificial because to do so would give effect to one aspect of the consent while ignoring the other. They reconcile § 9–306(2) with § 9–402(7) by construing the latter as applying only to such conditional authorization. Other decisions arrive at the opposite result. Some do so because the lien is hidden after the conditional transfer from a potential creditor examining the records unless the record search includes the collateral's entire chain of title. *See, e.g., Trustee Services Corp. v. East River Lumber Co., Inc. (In re Hodge Forest Industries, Inc.),* 59 B.R. 801 (Bankr.D. Idaho 1986).

*In re Martin Specialty Vehicles, Inc.,* 87 B.R. 752, 761 (Bankr.D.Mass.1988). The *Martin* Court adopted the former rule for the following reason:

Official Comment No. 8 to U.C.C. § 9–402 anticipates the necessity of searching the entire chain of title.[2] ... A construction of § 9–306(2) as excluding conditional assent from its operation and of § 9–402(7) as referring to such assent, therefore, not only puts the two statutes in harmony, but is also consistent with Official Comment 8 to § 9–402. This type of conditional consent should be distinguished from the situation where the secured party permits a sale on the condition that it be paid from the proceeds. There the condition relates to an event occurring after the transfer so that it can be logically separated from the consent. *See, e.g., Moffat County State Bank v. Producers Livestock Association,* 598 F.Supp. 1562 (D.Colo.1984).

*Id.* at 761–62 (footnote added).

■ This Court agrees that §§ 9–306(2) and 9–402(7) are best read as providing that a security interest terminates upon the transfer of the collateral unless the secured creditor unambiguously authorized

**2.** Comment 8 reads as follows:

Subsection (7) also deals with a different problem, namely whether a new filing is necessary where the collateral has been transferred from one debtor to another. This question has been much debated both in pre-Code law and under the Code. This Article now

answers the question in the negative. Thus, any person searching the condition of the ownership of a debtor must make inquiry as to the debtor's source of title, and must search in the name of a former owner if circumstances seem to require it.

the disposition subject to its security interest. *Cf., Matter of Franchise Systems*, 46 B.R. 158, 162 (Bankr.N.D.Ga.1985), *citing In re Matto's, Inc.*, 8 B.R. 485, 489 (Bankr. E.D.Mich.1981) (a security interest continues in collateral unless it is clear that the parties intended otherwise).[3]

A review of the record reveals that SBA's consent to the transfer of the collateral was conditioned on the continuation of its security interest. The Assumption Agreement states that SBA was consenting to the "sale and transfer" of the assets subject to the "terms and conditions" of the note, "as modified, restated and renewed" pursuant to the Assumption Agreement. The agreement modified the note to the extent of redetermining the payment amounts and dates only. The note, which was attached to the Assumption Agreement as Exhibit A, recites that Cohutta Bank had transferred its "rights, titles, interest, powers and options in, to and under the within promissory note" to SBA. One of those "rights" was that upon nonpayment of the indebtedness, the creditor could proceed against the collateral. "Collateral," in turn, was defined as property hypothecated as security for the note.

The Court concludes that all the parties unambiguously agreed that SBA's security interest would continue in the collateral. Cohutta Mills therefore acquired King's Tuft's property subject to SBA's security interests.

*2. Was the Filed Financing Statement Effective to Perfect SBA's Security Interest in the Property After the Property had been Transferred to Cohutta Mills?*

 Under Georgia law, a financing statement, among other things, must give the correct name of the debtor. Ga.Code Ann. § 11–9–402(1). A financing statement that misnames the debtor is nevertheless effective so long as the error is not "seriously misleading." *See* § 11–9–402(8) ("A financing statement that substantially complies with the requirements of this Code section is effective even though it contains minor errors which are not seriously misleading."); *Roberts v. International Harvester Credit Corp.*, 143 Ga.App. 206, 207, 237 S.E.2d 697 (1977). Conversely, if the financing statement misnames the debtor "so substantially that it is misleading, the filing has no effect and does not perfect the security interest." 9 R. Anderson, *Uniform Commercial Code*, § 9–402:48, at 485 (3rd ed.1985) (footnote omitted); *see In re Firth*, 363 F.Supp. 369 (M.D.Ga.1973).

If a financing statement is effective when filed but it becomes seriously misleading due to the subsequent name change or restructuring of the debtor, the secured party, under the second sentence of § 11–9–407(2), is nevertheless protected as to collateral covered through that time and, if applicable under the security agreement, to property acquired by the debtor through four months thereafter. § 11–9–402(7); *In re Taylorville Eisner Agency, Inc.*, 445 F.Supp. 665, 668 (S.D.Ill.1977); *Uniform Commercial Code* § 9–402(7) comment 7 ("[t]he old financing statement, if legally still valid under the circumstances, would continue to protect collateral acquired before the change and ... acquired within the four months.").

If, on the other hand, the financing statement is effective when filed but the collateral is transferred by the debtor, then, under the third sentence of § 11–9–402(7),

---

**3.** One commentator had prophesied a slightly different course for the case law's development. He noted the language of §§ 9–306(2) and 9–402(7) quoted in the text and in addition noted that § 9–307 protects *bona fide* purchasers. After identifying the conflict between these sections, he concluded that "[i]t is expected that courts will regard UCC § 9–306 and § 9–307 as modifying the flat statement of § 9–402(7) [by providing that] a transfer of all or part of the collateral when consented to by the secured creditor will discharge the security interest as to the collateral but the perfection obtained by filing will continue as to proceeds." 9 R. Anderson, *Uniform Commercial Code* § 9–306:43 at 168 (3rd ed.1985).

The rule articulated in the text does not conflict with the commentator's reasoning: a security interest in the proceeds of the transfer of collateral—as opposed to an interest in the collateral itself—could, in an appropriate case, continue notwithstanding the secured party's consent to the transfer, even if that consent was unconditional.

the secured party's interest is perfected as to that collateral only. § 11–9–402(7) ("a filed financing statement remains effective with respect to collateral transferred by the debtor even though the secured party knows of or consents to the transfer.").[4]

In sum, therefore, once the secured party files an effective financing statement, it is relieved, to a certain extent, of the burden of correcting misleading errors, and a prospective creditor is obligated to inquire into the debtor's source of title. *Taylorville*, 445 F.Supp. at 669; *Franchise Systems*, 46 B.R. at 162, *quoting Uniform Commercial Code* § 9–402(7) comment 8.

In the instant case, the financing statement was effective when filed in 1977 as it correctly named King's Tuft as the debtor. In 1980, however, when the collateral was transferred to Cohutta Mills, the statement became seriously misleading: because the two names are completely dissimilar, a searcher of Cohutta Mills' interests would not be alerted to inquire into King's Tuft's interests.

The effect of the filed financing statement is more difficult to resolve because the creation of Cohutta Mills was both a transfer of assets and a restructuring of King's Tuft's business to avoid financial problems. The UCC itself does not explain how a court should distinguish between those situations for purposes of § 9–402(7) and, as the *Taylorville* Court noted, "[i]n practically all cases of transfer of secured collateral the transferee would have a different name, identity or corporate organization." *Taylorville*, 445 F.Supp. at 669.

The Ninth Circuit has discussed the vagueness of the UCC in this regard and, after reviewing the sparse authority on point, determined that "the drafters intend-

ed the third sentence to apply to bona fide transfers to third parties *unrelated* to the transferor." *Bank of the West v. Commercial Credit Financial Services, Inc.*, 852 F.2d 1162, 1168–71 & n. 6 (9th Cir.1988) (emphasis added).

In the instant case, based on the facts found by the Bankruptcy Court, which are not "clearly erroneous,"[5] the transaction in question seems closer to a restructuring of the corporation than a transfer of assets. Specifically, the Bankruptcy Court found that the two corporations had the same president and that Cohutta Mills pursued the same line of business at the same location using the same machinery and equipment as King's Tuft. Rather than merely a transfer of assets between two corporations, King's Tuft essentially became Cohutta Mills as a result of the transactions.[6] The third sentence does not apply because the transfer was not between unrelated parties. *See Bank of the West*, 852 F.2d at 1168–71.

Under the second sentence of § 9–402(7), therefore, SBA's filed financing statement became seriously misleading upon the transfer of assets to Cohutta Mills, and covered property owned and acquired by Cohutta Mills through four months from the date of transfer only.

Having resolved that issue, the Court must determine whether the continuation statement filed in the name of King's Tuft renewed SBA's perfected interest in that property.[7]

*3. Was the Continuation Statement Effective to Renew SBA's Perfected Security Interest?*

■ A financing statement is effective for five years from its filing date. Ga.

---

4. In *Taylorville*, the Court stated that a filed financing statement remains effective with respect to "after-acquired" property as well. 445 F.Supp. at 669–70. This Court respectfully disagrees because § 9–402(7) expressly applies to "collateral transferred by the debtor," and after-acquired property, by definition, would not be "transferred by the debtor." *See also Bank of the West v. Commercial Credit Financial Services, Inc.*, 852 F.2d 1162, 1168 (9th Cir.1988) (the third sentence covers collateral "actually transferred" by the debtor).

5. A bankruptcy court's factual findings cannot be set aside by the district court unless the findings are "clearly erroneous." Bankr.R. 8013; *In re Thomas*, 883 F.2d 991, 994 (11th Cir.1989).

6. *See supra*, note 1.

7. Even if the facts were governed by the third sentence of § 9–402(7), the financing statement would only perfect property actually transferred by King's Tuft, and the Court would still need to resolve the continuation statement issue.

Code Ann. § 11–9–403(2). If the creditor wishes to extend the perfection, it must file a "continuation statement" within the six month period that precedes the expiration of that five year period. § 11–9–403(3). The continuation statement must "be signed by the secured party, identify the original statement by file number, [and] state the original statement is still effective." *Id.* A continuation statement is effective for 5 years, and succeeding continuation statements may be filed indefinitely. *Id.*

The statute expressly requires that a continuation statement reflect a change in the debtor's address or in the location of the collateral if such a change causes the statement to be filed in a different office from the financing statement. The statute does not, however, expressly require that a continuation statement reflect a change in the name of the debtor.[8]

Arguably, SBA's continuation statement in the name of King's Tuft was valid because the statement met the core requirements of § 11–9–403: the financing statement, as discussed, was effective to perfect SBA's security interest in collateral owned and acquired by Cohutta Mills through four months after the transfer of assets, and

the continuation statement stated that the original statement was still effective.

On the other hand, the financing statement statute provides that a seriously misleading statement at the time of filing is ineffective whereas a financing statement that *becomes* seriously misleading is effective to a limited extent. *See* § 11–9–402. The statutes do not contain a similar provision for continuation statements. Some cases, however, have noted that because the mutual purpose of financing and continuation statements is to give notice to creditors, the "seriously misleading" test of § 9–402(8) applies to determining whether errors in continuation statements render the statement ineffective. *See In re Hilyard Drilling Co., Inc.,* 840 F.2d 596, 600 (8th Cir.1988) (a new financing statement could not function as a continuation statement because it did not refer the searcher to the original financing statement); *In re Adam,* 96 B.R. 249, 252 (Bankr.D.N.D. 1989) (a second continuation statement that referred to the first continuation statement instead of to the original financing statement was not seriously misleading because the first continuation statement, in turn, referred to the original financing statement); *In re Vincent Gaines Implement Co., Inc.* 71 B.R. 14, 16 (Bankr.E.D.Ark.

---

8. *In re Cattle Complex Corp.,* 61 B.R. 526 (Bankr.D.N.M.1986), cited by the parties, is inapposite. In that case, PCA, the secured creditor, had properly perfected its interest in the property of its debtor, Chaves, in 1980. In 1983, Chaves transferred the collateral to CCC. PCA was informed of the transfer, and, although the parties had not reached agreement on CCC assuming Chaves' indebtedness, CCC paid money to PCA and PCA extended credit to CCC. In 1984, PCA filed a continuation statement in the name of Chaves. The issue presented to the court was whether PCA had a perfected security interest in CCC's property.

The court first ruled that, under § 9–306(2), because PCA's authorization of the transfer of the collateral was not "unambiguous," CCC acquired the property subject to that interest. The court then turned to § 9–402(7) to decide if a new statement in the name of CCC was necessary. Based on the applicable law, the Court determined that PCA was obligated to file an amended financing statement after the transfer, and its continuation statement in the name of the old debtor was ineffective.

The statute in effect in New Mexico at the time did not contain the amendment, contained

in the Georgia Code, that "a filed financing statement remains effective with respect to collateral transferred by the debtor even though the secured party knows of or consents to the transfer." The Court nevertheless noted that even if the amendment had been applicable, it would have found the interest unperfected because PCA had extended credit to CCC without agreeing that CCC would assume Chaves' indebtedness. This statement appears to conflict with the Court's prior finding that CCC acquired the property subject to the security interest and, in any event, is *dicta.*

*Cattle Complex* is distinguishable from the instant case because it concerns whether, following the transfer of collateral from one debtor to another, a continuation statement in the name of the old debtor can substitute for an amended financing statement in the name of the new debtor, when such an amendment is required. The opinion does not resolve whether a continuation statement must reflect a change in the name of the debtor when a financing statement in the name of the old debtor is effective without an amendment.

1986) (a continuation statement that incorrectly identified the original financing statement by one digit was not seriously misleading because the searcher was alerted to the existence of a prior statement and could immediately find the document by checking the debtor index); *In re Edwards Equipment Co.*, 46 B.R. 689, 691–92 (Bankr.W.D.Okla.1985) (a continuation statement that cited to the amended financing statement instead of to the original financing statement was effective because the amended financing statement, in turn, identified the original financing statement); *In re Barnes*, 15 U.C.C.Rep.Serv. 956, 961–63 (Bankr.D.Me.1974) (a statement that alerted parties to the original filing but did not contain any other requirements of a continuation statement was nevertheless effective to continue the secured party's perfected status because the omissions were "harmless" under § 9–402).

The cited cases stand for the proposition that a continuation statement must substantially comply with the requirements of § 9–403(3) to be effective, but they do not resolve whether a continuation statement must, in addition to the explicit statutory requirements, reflect a change in the debtor. In that connection, *Matter of Centennial Industries, Inc.*, 3 B.R. 416 (Bankr.S. D.N.Y.1980), is helpful. Maremont, the secured creditor, filed a financing statement in 1973 to perfect its interest in property of Jabro Auto Parts Warehouse, Inc. In 1974, Jabro was merged into Centennial Industries, Inc. and was known as a division of Centennial. When Maremont filed its continuation statement in 1978, however, it styled the debtor as Jabro without referring to Centennial.

The *Centennial* Court did not cite to § 9–403, but held the continuation statement ineffective because a creditor of Centennial would not have notice of Maremont's interest in Jabro's property. The Court relied on cases that found inaccurate names in financing statements to be seriously misleading, and therefore ineffective, under § 9–402. *See* 3 B.R. at 419, *citing*

*Siljeg v. National Bank of Commerce of Seattle*, 509 F.2d 1009 (9th Cir.1975); *In re Leichter*, 471 F.2d 785 (2d Cir.1972); *In re Levins*, 7 U.C.C.Rep.Serv. 1076 ([Bankr.] E.D.N.Y.1970); *In re Pasco Sales Co., Inc.*, 52 A.D.2d 138, 383 N.Y.S.2d 42 (2d Dept. 1976). By relying on these cases, the *Centennial* Court assumed that, similar to the requirements for financing statements, a continuation statement cannot be seriously misleading in naming the debtor.

■ The Court agrees with that assumption. Although § 9–403 is silent about such a requirement, the purpose of the financing and continuation statements is to provide notice of security interests to prospective creditors, and an umbrella provision of the UCC mandates that every duty be performed in "good faith."[9] If a debtor changes its name such that a filed financing statement becomes seriously misleading, it would be incongruous to permit the limited effectiveness of that filing to be renewed by a seriously misleading continuation statement. The better rule is that upon the lapse of a seriously misleading, though partially effective, financing statement, the secured party, acting in good faith, must file a continuation statement under the new debtor's name if it wishes to sustain its perfected status.[10]

SBA argues that because § 9–402(7) imposes a burden on prospective creditors to search in the name of the former owner of collateral, its continuation statement was valid. First, that duty is imposed when the debtor's situation changes during the five year term of the financing statement, and the UCC is silent about whether that duty continues once that term has lapsed. Second, as the trustee argues, continuation statements can be filed indefinitely, and requiring prospective creditors to search in the name of a former owner can in certain circumstances become an unduly burdensome task. From a practical perspective, the rule fashioned by the Court is more reasonable.

Under the rules discussed and on the facts presented in this case, the Court con-

---

9. Ga.Code Ann. § 11–1–203.

10. Of course, a secured creditor could file under both names to insure that all persons searching

the records would receive actual notice of its interest.

cludes that the continuation statement was seriously misleading when it was filed and is therefore ineffective to sustain SBA's perfected status in the property of Cohutta Mills.[11]

### 4. Was SBA Contractually Obligated to File Financing Statements in the Name of Cohutta Mills?

Due to the decision reached, the Court need not resolve the trustee's argument that SBA was obligated by the terms of the Assumption Agreement to file statements in the name of Cohutta Mills. The Court notes, however, that because perfection involves notice to third parties, a contractual agreement between the debtor and creditor about the proper filing has little, if any, bearing on the requirements for perfection.

### Conclusions

When King's Tuft transferred its assets to Cohutta Mills, Cohutta Mills took the collateral subject to SBA's security interests. SBA's financing statement, which was on file in the name of King's Tuft, became seriously misleading at that time, with the legal consequence that SBA's security interest was perfected as to property owned and acquired by Cohutta Mills through four months after the transfer only.

The continuation statement, filed by SBA in 1982 in the name of King's Tuft, was seriously misleading when it was filed because the debtor at that time was Cohutta Mills. The continuation statement is therefore ineffective, which renders SBA's security interest in Cohutta Mills' property unperfected.

ACCORDINGLY, the decision of the Bankruptcy Court is REVERSED.

IT IS SO ORDERED.

---

11. As stated *supra* n. 3, the Court's opinion does not reach whether a secured creditor's interest in the proceeds from the transfer of collateral would be perfected under the circumstances presented in this case. Further, the Court expresses no opinion on the effectiveness of a continuation statement that becomes seriously misleading after it has been filed.