**LMS HOLDING COMPANY, an Oklahoma corporation; Petroleum Marketing Company, an Oklahoma corporation; Retail Marketing Company, an Oklahoma corporation, Appellees,**

v.

**CORE–MARK MID–CONTINENT, INC., formerly known as Mid–Continent Distributors, Inc., also known as Core–Mark Distributors; Amcon Distributing Company, Appellants.**

No. 94–5130.

United States Court of Appeals, Tenth Circuit.

March 16, 1995.

Todd Maxwell Henshaw, Tulsa, OK, for appellants.

Steven W. Soule (Thomas A. Creekmore and Pamela H. Goldberg, on the brief), of Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Tulsa, OK, for appellees.

Before BALDOCK and BRORBY, Circuit Judges, and BROWN, District Judge.*

BALDOCK, Circuit Judge.

Coremark and Amcon ("Coremark") appeal the district court's grant of summary judgment in favor of Retail Marketing Company ("RMC"). The district court held that Coremark did not have a perfected security interest in RMC's after-acquired inventory. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

In 1988, MAKO, Inc. ("MAKO"), a chain of convenience stores, granted Coremark a security interest in its inventory, after-acquired inventory, and inventory proceeds. Coremark perfected its security interest by filing a financing statement naming MAKO as the debtor. MAKO subsequently filed a Chapter 11 bankruptcy petition.

As part of MAKO's reorganization plan, RMC, an unrelated third party entity, agreed to acquire certain assets in MAKO's convenience stores and take over store operations. The acquired assets included specific inventory subject to Coremark's perfected security interest. The plan provided that Coremark would retain its lien in the "assets ... acquired by RMC pursuant to [the] Plan" and that this lien would "continue in full force and effect in accordance with [its] terms." The bankruptcy court confirmed the MAKO plan in August 1989.

Following confirmation of the MAKO plan, RMC executed a new promissory note and security agreement in order to assume the indebtedness of MAKO. The security agreement granted Coremark a security interest in RMC's inventory, after-acquired inventory, and inventory proceeds. Coremark, however, did not file a new financing statement naming RMC as the debtor to perfect its security interest in RMC's inventory. Thereafter, RMC sold the MAKO inventory in the regular course of business and commingled the proceeds from the sale with other RMC assets. These proceeds are no longer identifiable. RMC replaced the MAKO inventory with after-acquired inventory. On September 21, 1991, RMC filed a Chapter 11 bankruptcy petition.

On November 20, 1991, Coremark filed a proof of claim in the bankruptcy proceeding. Thereafter, on July 29, 1992, RMC commenced this adversary proceeding seeking *inter alia* to avoid Coremark's asserted security interest in its after-acquired inventory pursuant to 11 U.S.C. § 544(a)(1). On December 10, 1992, RMC filed a motion for summary judgment arguing that Coremark's security interest in its after-acquired inventory was unperfected because Coremark did not file a financing statement naming RMC as the debtor after RMC acquired the

* The Honorable Wesley E. Brown, Senior United States District Judge for the District of Kansas, sitting by designation.

MAKO assets and took over store operations under the MAKO plan.

The bankruptcy court rejected this argument and denied the motion. In so holding, the bankruptcy court relied on Okla.Stat. Ann. tit. 12A, § 9–402(7), which provides in pertinent part that "[a] filed financing statement remains effective with respect to collateral transferred by the debtor even though the secured party knows of or consents to the transfer." Under this provision, the bankruptcy court concluded that the term "collateral" encompassed after-acquired property. Thus, the court held that Coremark's financing statement covering the MAKO collateral remained effective and served to perfect its security interest in RMC's after-acquired inventory "without the necessity of refiling a financing statement in [RMC's] name."

RMC appealed to the district court which reversed the bankruptcy court's holding. Specifically, the district court held that under § 9–402(7), Coremark's financing statement remained effective only as to the collateral actually transferred by MAKO under the bankruptcy plan. Thus, the district court concluded that Coremark's security interest in RMC's after-acquired inventory was unperfected because Coremark failed to file a new financing statement naming RMC as the debtor. Consequently, the district court granted summary judgment in favor of RMC. This appeal followed.

■■■ On appeal, Coremark argues the district court erred in granting summary judgment in favor of RMC. Specifically, Coremark contends that under § 9–402(7), the financing statement it filed naming MAKO as the debtor served to perfect its security interest in RMC's after-acquired inventory. We review the district court's grant of summary judgment de novo. *Eaton v. Jarvis Products Corp.*, 965 F.2d 922, 925 (10th Cir.1992). Summary judgment is appropriate when there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law. *Id.*

■■■ Pursuant to 11 U.S.C. § 544(a)(1), a debtor-in-possession (RMC in this case) may assert the rights of a hypothetical lien creditor once it files a bankruptcy petition. The rights of a lien creditor are determined by state law. *Woodson v. Utica Square Nat'l Bank of Tulsa (In re McClain)*, 447 F.2d 241, 243–44 (10th Cir.1971). Under Oklahoma law,[1] a lien creditor has priority over an unperfected, secured creditor. Okla.Stat. Ann. tit. 12A, § 9–301(1)(b), (3). Thus, in a bankruptcy proceeding, if the creditor's security interest is not perfected, the creditor " 'stands as [a] general unsecured creditor who must defer to the trustee.' " *Jones v. Small Business Admin. (In re Cohutta Mills, Inc.)*, 108 B.R. 815, 817 (N.D.Ga.1989) (quoting *In re Merts Equipment Co.*, 438 F.Supp. 295, 298 (M.D.Ga.1977)).

■■■ Under Oklahoma law, a secured creditor perfects a security interest in part by preparing and filing a financing statement describing the collateral subject to the security interest and naming the debtor. Okla. Stat.Ann. tit. 12A, § 9–302(1). Once a financing statement is filed, the security interest becomes perfected, *id.* § 9–303, protecting the secured party against conflicting interests in the same collateral. *Id.* § 9–312.

Section 9–402 covers the formal requisites of the initial filing and subsequent amendment of a financing statement. Subsection (7) addresses a secured party's duty to refile a financing statement in certain enumerated instances:

A financing statement sufficiently shows the name of the debtor if it gives the individual, partnership or corporate name of the debtor, whether or not it adds other trade names or the names of partners. Where the debtor so changes his name, or in the case of an organization, its name, identity, or corporate structure that a filed financing statement becomes seriously misleading, the filing is not effective to perfect a security interest in collateral acquired by the debtor more than four (4) months after

---

1. The collateral subject to dispute is located in Oklahoma, Arkansas, Kansas, and Missouri. The parties have stipulated that the law of secured transactions adopted in these jurisdictions is identical to the Uniform Commercial Code ("UCC"). Consequently, both the district and bankruptcy courts relied on Oklahoma's version of the UCC to resolve the instant dispute.

the change, unless a new appropriate financing statement is filed before the expiration of that time. *A filed financing statement remains effective with respect to collateral transferred by the debtor even though the secured party knows of or consents to the transfer.*

Okla.Stat.Ann. tit. 12A, § 9–402(7) (emphasis added). Under this section, the second sentence addresses a secured creditor's obligation to refile a financing statement in instances where there has been a "change[ ] in the identity or structure of the debtor in which the 'new' debtor is a successor enterprise of the original debtor." *Bluegrass Ford–Mercury, Inc. v. Farmers Nat'l Bank of Cynthiana (In re Bluegrass Ford–Mercury, Inc.),* 942 F.2d 381, 388 (6th Cir.1991) (citing *Bank of the West v. Commercial Credit Fin. Serv.,* 852 F.2d 1162, 1169 (9th Cir. 1988)). In contrast, the third sentence applies only to those instances where there has been a "bona fide transfer[ ] [of collateral] to third parties unrelated to the transferor." *Bank of the West,* 852 F.2d at 1169–70 n. 6.

Applying these principles to the instant case, the parties agree that the only provision applicable to the facts before us is the third sentence of § 9–402(7). Under this provision, the parties agree that Coremark's security interest remained perfected in the collateral actually transferred to RMC under the MAKO plan. The parties disagree, however, as to whether the financing statement naming MAKO as the debtor operated to perfect Coremark's security interest in collateral acquired by RMC *after* the MAKO transfer. Thus, the central issue we must resolve in this appeal is whether under the last sentence of § 9–402(7), Coremark's financing statement perfected its security interest in collateral acquired by RMC *after* the MAKO transfer.

Courts which have addressed the scope of § 9–402(7) have reached differing conclusions. For example, in *In re Taylorville Eisner Agency,* 445 F.Supp. 665 (S.D.Ill. 1977), a bank made a loan to individual debtors secured by fixtures, equipment, inventory, and after-acquired property. In order to perfect its security interest, the bank filed a financing statement naming the individuals

as debtors. On the same day as the note and security agreement were signed, the individual debtors transferred the collateral to a corporation they had previously formed and the corporation assumed the bank loan. The bank did not file a new financing statement naming the corporation as the new debtor. After selling the inventory which had been transferred and replacing it with after-acquired inventory, the corporation declared bankruptcy. *Id.* at 666–67.

Relying on the last sentence of § 9–402(7), the trustee argued that because the bank had not filed a new financing statement naming the corporation as the new debtor, the bank did not have a perfected security interest in the corporation's after-acquired inventory. The district court disagreed, stating in pertinent part:

[T]he final sentence speaks of collateral transferred by the debtor, which must mean the property subject to the security interest as defined in UCC § 9–105(1)(c). In this case the security interest covered existing fixtures and equipment as well as acquired inventory and merchandise.

. . . .

... The third sentence of subsection 7 is clear that the filed statement remains effective with respect to collateral transferred by the debtor regardless of the knowledge or consent of the secured party. *This also means collateral which is after-acquired property.*

*Id.* at 669 (emphasis added). Consequently, the district court held that the bank did not have to file a new financing statement naming the corporation as the new debtor in order to retain its perfected security interest in after-acquired property. *Id.* at 670.

The Sixth Circuit reached a contrary result in *Bluegrass,* 942 F.2d at 386. In *Bluegrass,* a bank made a loan to Bluegrass–Ford, a car dealership. The bank perfected its security interest by filing a financing statement which covered "all new cars and demonstrators in the inventory of Bluegrass Ford, Inc." The assets of the dealership were subsequently sold to an individual who then transferred the assets to a new, unrelated corporate entity called Bluegrass Ford–Mercury, Inc. The bank did not file a new financing statement

naming Bluegrass Ford–Mercury as the new debtor. The new dealership subsequently filed bankruptcy. *Id.* at 383.

On appeal, the bank argued that the financing statement filed in the name of Bluegrass Ford perfected its security interest in the after-acquired inventory of Bluegrass Ford–Mercury. The Sixth Circuit rejected this argument. The court noted that the last sentence of § 9–402(7) applies only "to collateral transferred by the debtor." *Id.* at 387. The court then held that this language did not "encompass collateral not yet acquired by the transferee debtor." *Id.* Consequently, the court concluded that the bank's financing statement originally filed in the name of Bluegrass Ford did not perfect its security interest in Bluegrass Ford–Mercury's after-acquired inventory. *Id.* at 388.

In accordance with the Sixth Circuit, other court's have concluded that pursuant to § 9–402(7), after-acquired property cannot constitute "collateral transferred by the debtor," *see In re Cohutta Mills,* 108 B.R. at 820 n. 4, and that a creditor perfects a security interest in after-acquired property of the debtor's transferee by filing a new financing statement in the name of the debtor's third party transferee. *See Steinberg v. American Nat'l Bank & Trust Co. of Chicago (In re Meyer–Midway, Inc.),* 65 B.R. 437, 444 (Bankr. N.D.Ill.1986) ("The Court agrees with the Trustee that the Bank would be obligated to file a revised financing statement to be perfected in new collateral or collateral intended to secure the Bank under the after-acquired property clause."); *Citizens Savings Bank v. Sac City State Bank,* 315 N.W.2d 20, 28 (Iowa 1982) (same); *see also* William M. Burke, *The Duty to Refile Under Section 9–402(7) of the Revised Article 9,* 35 Bus.Law. 1083, 1089 (1980) ("In order to perfect any security interest in the new property acquired by the transferee, the secured creditor must either file a financing statement signed by the transferee or take possession of the new property.").

■ We conclude the Sixth Circuit's reasoning is correct. As the court noted, under § 9–402(7) a filed financing statement remains effective only as "to collateral transferred by the debtor." *Bluegrass,* 942 F.2d

at 387. Inventory purchased by the transferee after the transfer cannot constitute property "transferred by the debtor." *See id.; In re Cohutta Mills,* 108 B.R. at 820 n. 4. Thus, a financing statement filed prior to a transfer of collateral in the name of the transferor does not serve to perfect a security interest in the transferee's after-acquired property. *See Bluegrass,* 942 F.2d at 387; *In re Meyer–Midway,* 65 B.R. at 443–44.

■ Applying this reasoning to the instant case, we conclude the financing statement Coremark filed in the name of MAKO did not perfect its security interest in RMC's after-acquired inventory. Rather, in order to perfect its security interest in RMC's after-acquired property, Coremark should have filed a new financing statement naming RMC as the debtor. Because Coremark failed to do so, its security interest in RMC's after-acquired inventory remained unperfected.

■ Coremark contends this result would contravene the express provisions of the MAKO bankruptcy plan which provided that Coremark's lien would "continue in full force and effect in accordance with [its] terms." Aplt.App. at 26. Coremark contends this provision of the bankruptcy plan relieved it from the requirement of filing a financing statement in the name of RMC to perfect its security interest in RMC's after-acquired inventory. We disagree.

The plan provided that Coremark's lien would continue as to assets *"to be acquired by RMC pursuant to [the] Plan."* As noted above, the assets to be acquired consisted of the inventory transferred by MAKO to RMC. Consequently, under the express terms of the plan, Coremark's lien remained perfected only as to property acquired by RMC under the MAKO plan. Thus, contrary to its assertions otherwise, the MAKO plan did not relieve Coremark of the requirement that it file a financing statement naming RMC as the debtor in order to perfect its security interest in RMC's after-acquired inventory.

AFFIRMED.