A97A0644. WESTERN AUTO SUPPLY COMPANY v. McKENZIE
et al.
(489 SE2d 537)

ANDREWS, Chief Judge.

The issue raised on this appeal is which of two liens has priority on the proceeds of the sale of a Western Auto store. The trial court determined that Commercial Bank & Trust Company of Troup County's ("CB&T's") lien had priority over that of Western Auto Supply Company ("Western Auto"). We disagree and reverse the judgment of the trial court.

The parties stipulated to the following facts. John Hadden d/b/a Western Auto Associates Store executed a security agreement granting a lien to Western Auto on the assets of his business, including inventory, fixtures, contract rights, accounts receivable, and so on. Western Auto filed a UCC-1 financing statement securing the above collateral on April 27, 1982. On December 30, 1986, John Hadden, d/b/a Western Auto Associates Store, opened a bank account at CB&T and executed a promissory note to CB&T for $175,000. On December 31, 1986, CB&T filed a UCC-1 financing statement covering all accounts and contract rights of John Hadden d/b/a Western Auto Associates Store.

On January 12, 1987, John Hadden incorporated under the name of WASLA, Inc. and executed a new dealer agreement between WASLA, Inc. and Western Auto. On February 4, 1987, WASLA entered into a security agreement with Western Auto, pledging all of WASLA, Inc.'s present and future inventory, accounts receivable, contract rights, chattel paper, fixtures and equipment as collateral to secure present and future debts owed to Western Auto. On March 23, 1987, Western Auto filed a financing statement covering all inventory, fixtures, and assets of WASLA, Inc.

On July 15, 1988, CB&T filed another financing statement listing the debtor as John Hadden d/b/a Western Auto Associates Store and the collateral as all equipment, inventory, contract rights, and accounts.

On October 4, 1991, the Western Auto financing statement was continued and on March 25, 1993, the CB&T financing statement was continued. No additional financing statements were filed by either party after the one filed on March 25, 1993.

In the meantime, on January 9, 1992, WASLA, Inc. was administratively dissolved. It appears the business was not doing well at this point and on April 13, 1994, a buyer was found for the store. On August 30, 1994, the sale was finalized. The settlement statement listed the name of the seller as "John Hadden, d/b/a Western Auto." Separate Bills of Sale to the purchaser from WASLA, Inc. and John Hadden were signed and delivered at closing.

The funds from the sale of the business were deposited into court and the holder brought an interpleader action to determine which party was entitled to the money. After a bench trial, the court below determined CB&T had the superior lien. The trial court reasoned that WASLA, Inc., the corporation, had ceased to exist at least by January 9, 1994, two years after it was administratively dissolved. Accordingly, Western Auto's lien had nothing to attach to, since the security agreement was with WASLA, Inc., not John Hadden. This appeal followed.

This case is controlled by Article 9 of the UCC. In interpreting cases under Article 9, it is important to keep in mind that the drafters of the Code accorded paramount status to the secured creditor first to file. "Conflicting security interests rank according to priority in time of filing or perfection. Priority dates from the time a filing is first made covering the collateral or the time the security interest is first perfected, whichever is earlier, provided that there is no period thereafter when there is neither filing nor perfection." OCGA § 11-9-312 (5) (a). In other words, "once the secured party files an effective financing statement, it is relieved, to a certain extent, of the burden of correcting misleading errors, and a prospective creditor is obligated to inquire into the debtor's source of title." *In re Cohutta Mills, Inc.*, 108 B. R. 815, 820 (N.D. Ga. 1989).

Here, Western Auto was the first to file a financing statement perfecting its security interest in the collateral of the store. From that date to the sale of the store, there was never any period in which Western Auto did not have a filed financing statement covering the collateral.

Neither a name change nor a change in the corporate structure affects this priority. OCGA § 11-9-402 (7) provides in pertinent part: "Where the debtor so changes his name, or in the case of an organization, its name, identity, or corporate structure, that a filed financing statement becomes seriously misleading, the filing is not effective to perfect a security interest in collateral acquired by the debtor more than four months after the change, unless a new appropriate financing statement is filed before the expiration of that time. A filed financing statement remains effective with respect to collateral transferred by the debtor even though the secured party knows of or consents to the transfer."

In the trial court, CB&T argued that after WASLA, Inc. was dissolved, it ceased to exist except for the limited purpose of winding up its affairs. OCGA § 14-2-1421 (c). It cited *Gas Pump v. General Cinema*, 263 Ga. 583 (436 SE2d 207) (1993), for the proposition that WASLA, Inc. ceased to exist two years after it was administratively dissolved. At that time the assets of the corporation became the property of John Hadden as the sole shareholder and, as a result, CB&T

claimed Western Auto's financing statement in the name of WASLA, Inc. became invalid.

Whether, and at what point in time, the corporation ceased to exist is immaterial. Assuming the financing statement became seriously misleading due to the change in the debtor's name from WASLA, Inc. to John Hadden individually[1] after the dissolution of the corporation, Western Auto is still protected as to collateral acquired through that time and up to four months thereafter. OCGA § 11-9-402 (7); *In re Cohutta Mills, Inc.*, supra at 819.

Here, even assuming as CB&T contends, that the corporation ceased to exist two years from the date it was administratively dissolved on January 9, 1992, and the name WASLA, Inc. became "seriously misleading" as to any subsequent creditor searching the record, that does not invalidate an otherwise valid financing statement. As stated above, under OCGA § 11-9-402 (7) the financing statement filed by Western Auto naming WASLA, Inc. as the debtor, was effective until at least four months after January 9, 1994, the date on which CB&T claims the corporation dissolved and the listing of WASLA, Inc. as the debtor on the financing statement became so inaccurate as to be seriously misleading. OCGA § 11-9-402 (7); *In re Cohutta Mills*, supra at 819. Moreover, at that point the financial statement only became ineffective as to any collateral acquired by John Hadden after May 9, 1994. There is nothing in the record before us to show that any collateral was acquired after May 9, 1994, especially since the parties stipulated that on April 13, 1994, an offer to purchase the store was extended and later accepted. Therefore, for the reasons discussed above, Western Auto had a valid financing statement on file securing the assets of John Hadden's Western Auto store, and its lien took priority over that of CB&T.

*Judgment reversed. McMurray, P. J., and Beasley, J., concur.*

DECIDED JUNE 30, 1997 —
RECONSIDERATION DENIED JULY 17, 1997 —

*Wyatt & Kendinger, John M. Wyatt*, for appellant.
*Willis, McKenzie & Long, Dewey R. McKenzie, Jr., Duncan, Thomasson & Acree, Thurman E. Duncan*, for appellees.

---

[1] A financing statement becomes seriously misleading when the two names are completely dissimilar, as are WASLA, Inc. and John Hadden, such that a prospective creditor searching under WASLA, Inc. would not be alerted to inquire into John Hadden's interests. *In re Cohutta Mills, Inc.*, supra at 820.